MYERS, P. J.,
 

 for the Court.
 

 ¶ 1. James Craig Palculict and Luciana Gascon Curtis Palculict were granted an irreconcilable differences divorce by the DeSoto County Chancery Court after ten years of marriage. Aggrieved by the chancellor’s decision regarding certain issues submitted to the chancery court, James appeals. Finding error, we affirm in part and reverse and remand in part.
 

 FACTS
 

 ¶ 2. James and Luciana were married on January 10, 1997, in Colorado Springs, Colorado. One child was born of the marriage, Anthony Carlos Palculict, on Sep
 
 *295
 
 tember 13, 1997. At the time of their marriage, James and Luciana were medics in the Air Force and Air Force Reserves, respectively. After leaving the service, James obtained an associate’s degree in healthcare services, and he was later licensed in Arkansas as a nursing home administrator before ultimately moving to Southaven, Mississippi, in August 2004. Luciana, however, was only intermittently employed during the marriage. The parties separated on January 25, 2006, and an irreconcilable differences divorce was granted on September 17, 2007.
 

 ¶ 3. On appeal, James argues that the chancellor erred in determining equitable distribution of the marital estate; awarding Luciana lump-sum, permanent, and rehabilitative alimony; awarding Luciana child support; and awarding full legal custody of the minor child to Luciana.
 
 [1]
 

 STANDARD OF REVIEW
 

 ¶4. Appellate review of domestic relation matters is limited.
 
 Carrow v. Carrow,
 
 741 So.2d 200, 202(¶ 9) (Miss.1999). We will not reverse unless the chancellor abused his discretion, was manifestly in error, or applied an erroneous legal standard.
 
 Id.
 
 (citation omitted). This is especially true when dealing with divorce, alimony, or child support.
 
 Sumrall v. Munguia,
 
 757 So.2d 279, 282(¶ 12) (Miss.2000).
 

 DISCUSSION
 

 1. Equitable Distribution and Lump-Sum Alimony
 

 ¶ 5. The supreme court has set a number of guidelines for chancellors to follow during equitable distribution. The chancellor must: (1) classify the parties’ assets as marital or separate, (2) value those assets, and (3) divide the marital assets equitably.
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928 (Miss.1994). Marital property consists of assets acquired or accumulated during the course of the marriage,
 
 Hemsley v. Hemsley,
 
 639 So.2d 909, 915 (Miss.1994), whereas separate property consists of property acquired before or outside of the marriage.
 
 MacDonald v. MacDonald,
 
 698 So.2d 1079, 1082-83 (Miss.1997). All assets acquired during the marriage are presumed to be marital.
 
 Hemsley,
 
 639 So.2d at 915.
 

 ¶ 6. The chancellor found the only marital property to be a rental house in Monticello, Arkansas, which was awarded to James. On appeal, James argues that the chancellor failed to identify and value other marital assets;
 
 [2]
 
 however, in his proposed findings of fact and conclusions of law, James identified the rental house as the only marital property. He cannot complain on appeal that the chancellor adopted a finding of fact after proposing it himself.
 

 ¶ 7. James also argues that the chancellor erred in valuing the Arkansas property, but we can find no abuse of discretion. The chancellor valued the property at a net equity of $21,120, which is significantly below Luciana’s valuation of $33,120. Generally, “findings on valuation do not require expert testimony and may
 
 *296
 
 be accomplished by adopting the values cited in the parties’ 8.05 financial disclosures, in the testimony, or in other evidence.”
 
 Horn v. Horn,
 
 909 So.2d 1151, 1165(¶ 49) (Miss.Ct.App.2005). James argues that Luciana’s valuation of the home was contradicted by her stated desire that it be awarded to him; however, the testimony indicated that Luciana moved to California after the separation, intended to stay there permanently, and that the Monticello home required considerable repairs which James, who had experience renovating homes, was in the best position to effect.
 

 ¶ 8. Finally, James argues that the chancellor’s grant of a $60,000 lump-sum alimony to Luciana to balance a deficiency in the equitable distribution is an abuse of discretion. The supreme court has propounded four factors to be considered by a chancellor in determining lump-sum alimony: (1) substantial contribution to accumulation of total wealth of the payor either by quitting a job to become a housewife, or by assisting in the spouse’s business; (2) a long marriage; (3) where recipient spouse has no separate income or the separate estate is meager by comparison; and (4) without the lump-sum award the receiving spouse would lack any financial security.
 
 Cheatham v. Cheatham,
 
 537 So.2d 435, 438 (Miss.1988). “A closer analysis of these cases, however, reveal[s] that the single most important factor undoubtedly is the disparity of the separate estates.”
 
 Id.
 
 The supreme court has also stated that it “has allowed lump[-]sum alimony as an adjustment to property division to prevent unfair division” and has noted that “[t]he lump[-]sum award has been described as a method of dividing property under the guise of alimony.”
 
 Haney v. Haney,
 
 907 So.2d 948, 952(¶ 16) (Miss.2005) (citations and internal quotations omitted).
 

 ¶ 9. The chancellor made detailed findings on this issue, stating that he awarded Luciana permanent alimony to counterbalance the award of the Arkansas property to James. The chancellor also noted that Luciana presently had no separate estate because she had contributed her entire inheritance from her mother, approximately $80,000, to the family, and those funds had been used in large part to purchase the Arkansas home. He also found that Luciana lacked financial security because she had repeatedly sacrificed her career to help James advance his, had supported James while he went to school, and was in remission after surviving breast cancer. Accordingly, we find no abuse of discretion in the chancellor’s award of lump[-]sum alimony to Luciana.
 

 2. Periodic Alimony
 

 ¶ 10. The chancellor made detailed findings under the twelve factors propounded by the supreme court in
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278, 1280 (Miss.1993), and awarded Luciana $1,500 per month as permanent periodic alimony. On appeal, James asserts that the chancellor abused his discretion, arguing that the chancellor erred in taking into account Lu-ciana’s residence in California, in failing to consider Luciana’s ability to work, and in not considering James’s ability to pay.
 

 ¶ 11. “The supreme court has recognized on numerous occasions that the general rule under which the amount of alimony is to be calculated provides that the recipient should be entitled to a reasonable allowance that is commiserate with the standard of living to which they had become accustomed measured against the ability to pay on the part of the party subjected to the payment order.”
 
 Johnson v. Johnson,
 
 877 So.2d 485, 495-96(¶ 45) (Miss.Ct.App.2003) (citations omitted). The record reflects that the Palculicts had
 
 *297
 
 earned an average of almost $175,000 per year over the last three years but, by James’s own admission, lived beyond their means. The record also reflects that the couple had moved to Southaven, Mississippi, as a result of James’s job, and had resided there for approximately one and one-half years prior to the separation.
 

 ¶ 12. The chancellor noted in his decision that, during the marriage, Luciana had worked infrequently as a result of her struggle with breast cancer and her family’s frequent moves. Luciana testified that she was working toward a license to sell insurance in California, and the chancellor expressed concern that she may suffer a recurrence of breast cancer in the future or may find it difficult to secure permanent employment as a result of her illness. The chancellor also found Lucia-na’s and Anthony’s post-separation standard of living to be far below James’s under the temporary support order, which provided for $750 in alimony and $500 in child support per month.
 

 ¶ 13. James’s net income at the time of the divorce was approximately $7,500 per month. The chancellor ordered that James pay $1,500 per month in periodic alimony, $112 per month for Anthony’s medical insurance, and $980 per month in child support.
 
 [3]
 
 Additionally, James’s living expenses at the time of the divorce included $1,800 per month in rent, approximately $625 per month in utilities, and approximately $1,200 per month for the leasing, insuring, and fueling of his BMW automobile. James also cites the present monthly cost of one-time or temporary payments ordered by the chancellor, which include monthly payments on the lump-sum alimony.
 
 [4]
 
 We have noted, however, that a chancellor may disregard such short-term, temporary obligations in computing periodic alimony or child support.
 
 See, e.g., Traxler v. Traxler,
 
 730 So.2d 1098, 1104(¶ 32) (Miss.1998);
 
 Bumpous v. Bumpous,
 
 770 So.2d 558, 561(¶ 16) (Miss.Ct.App.2000).
 

 ¶ 14. On our review of the record, we can find no abuse of discretion in the chancellor’s award of periodic alimony.
 

 3. Rehabilitative Alimony
 

 ¶ 15. James argues that the issue of rehabilitative alimony was not submitted to the chancellor and that the award amounts to an abuse of discretion. He asserts that the chancellor ordered as rehabilitative alimony that James pay Lucia-na’s outstanding out-of-pocket medical expenses at the time of the divorce and maintain health insurance on Luciana for twenty-four months.
 

 ¶ 16. However, our review of the record does not reveal that rehabilitative alimony was ordered. We note that the chancellor did state in his findings of fact and conclusions of law that he would order it, but the judgment of divorce contains no provision requiring the payment of rehabilitative alimony. Accordingly, this issue is without merit.
 

 4. Child Support
 

 ¶ 17. James argues that the chancellor erred in ordering that he pay $980 per month in child support. Particularly,
 
 *298
 
 James argues that the chancellor erred in considering the cost of parochial schooling in California and that the child support obligation is excessive in light of the other awards.
 

 ¶ 18. As we stated above, we do not find the child support excessive in light of the other awards. Furthermore, the record reflects that Anthony attended a private, parochial school prior to the divorce, and the chancellor made written findings that the child support guidelines were appropriate in light of the circumstances. Additionally, at the divorce hearing, James stated that he “absolutely” would consent to an order for child support under the guidelines. We find no abuse of discretion here, and this issue is without merit.
 

 5. Legal Custody
 

 ¶ 19. The parties agreed that Luciana would receive physical custody of Anthony, but they submitted the issue to the chancellor as to whether they should share joint legal custody. The chancellor found that Luciana should receive full legal custody.
 

 ¶ 20. James argues that the chancellor abused his discretion in not considering the familiar
 
 Albright
 
 factors.
 
 See Albright v. Albright,
 
 437 So.2d 1003, 1005 (Miss.1983). However, the
 
 Albright
 
 factors are required only where physical custody is at issue; the chancellor’s decision as to the child’s best interest as to legal custody alone is less regimented. In this case, we find no abuse of discretion; the chancellor properly considered the distance between the parties, and there is evidence in the record that the parties could not agree on basic issues relating to Anthony’s care, particularly whether the child should live in California or attend private school. This issue is without merit.
 

 6. Visitation Costs
 

 ¶ 21. James argues that the chancellor erred in ordering him to pay the costs of visitation to and from California. We find this argument meritorious. The chancellor stated that this issue had been decided by agreement of the parties; however, it was clearly submitted to the court. Other than Luciana’s representation at the hearing that James had agreed to pay transportation costs, there is no evidence in the record that James conceded the issue. Accordingly, we reverse and remand on this issue for the trial court to determine how transportation costs should be allocated.
 

 CONCLUSION
 

 ¶ 22. We remand for proceedings consistent with this opinion on the issue of visitation travel costs. The chancellor’s judgment is otherwise affirmed.
 

 ¶ 23. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE PARTIES.
 

 KING, C.J., LEE, P.J., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J„ NOT PARTICIPATING.
 

 [1]
 

 . James initially sought to set aside the divorce judgment on appeal, but in his reply brief he asks to withdraw that issue, stating that he has now remarried. We therefore decline to address it.
 

 [2]
 

 . James asserts that the chancellor failed to consider a 1999-model Dodge truck worth at least $3,610; proceeds from the sale of the marital home that were previously divided equally among the parties; at least $11,000 Luciana took from joint accounts prior to the separation; certain marital debt James paid after the entry of a temporary support order; and unspecified household items and tools.
 

 [3]
 

 . James asserts that his other obligations include $1,250 per month for the mortgages and upkeep of the Arkansas property, $500 per month on another child support order for children of a prior marriage, and “$1[,]000 + " for "credit card and other debt payment."
 

 [4]
 

 . James also cites the cost of travel to and from California for visitation. However, we remand on that issue.