# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CP-00069-COA

**ELLE ADAMS A/K/A ELLE AQUILERA A/KA ELLIE ADAMS A/K/A ELLE AGUNDIS**　　　　　　　　**APPELLANT**

**v.**

**JOHN LEON RICE**　　　　　　　　　　　　　　　　　**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/23/2014 |
| TRIAL JUDGE: | HON. DOROTHY WINSTON COLOM |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ELLE A. ADAMS (PRO SE) |
| ATTORNEY FOR APPELLEE: | MARK G. WILLIAMSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | VISITATION AND JOINT LEGAL CUSTODY GRANTED |
| DISPOSITION: | AFFIRMED - 06/28/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., CARLTON AND JAMES, JJ.

### JAMES, J., FOR THE COURT:

### FACTS AND PROCEDURAL HISTORY

¶1.　John Rice and Elle Adams met in 2011 on a dating website. Thereafter, they met in person at Books-A-Million in Columbus, Mississippi. At that time, Rice was employed as a police officer with the Columbus Police Department. According to Rice, he and Adams began dating, and he eventually moved in with Adams and her two daughters. Her daughters were ages three and fifteen. Adams gave Rice a key to the home, and Rice claimed that he often kept Adams's two children. Adams, however, denies ever dating Rice and living

together. Adams claimed that Rice would often come over, uninvited and intoxicated. Adams did admit that she gave Rice a key, but she testified that she asked Rice to return the key and even contacted his employer to have it returned. According to Adams, Rice was violent, neglectful, and an alcoholic.

¶2. Rice and Adams's relationship, nevertheless, resulted in the birth of their son on September 19, 2013. Rice claimed that he continued to live with Adams until their son was about a month old. According to Rice, they began to have problems once he refused to marry Adams. Rice claimed that Adams threatened to take the child to Mexico and "adopt the child out." Rice testified that he moved out of Adams's home shortly thereafter. Adams, on other hand, testified that their son was the result of Rice raping her.

¶3. On December, 30, 2013, Rice filed a petition to establish paternity, custody, and support of their son in the Chancery Court of Oktibbeha County, Mississippi. Rice initially wanted custody, but that issue was later narrowed down to visitation privileges. On September 3, 2014, Adams filed a counterclaim for custody, child support, and the medical costs incurred in the birth of the child. The trial was held on September 4, 2014. At that time the child was eleven months old.

¶4. At trial, Rice called three witnesses to testify on his behalf. Two testified that they had been to the home that Rice and Adams shared and had observed their relationship. One witness also testified that Rice had brought Adams's youngest daughter to her office, and the child appeared to be comfortable with Rice. The chancellor found all three witnesses' testimony to be credible.

¶5.     The chancellor also found that the three witnesses' statements were highly relevant because Adams claimed that Rice's visitation should be supervised if awarded. Adams testified that any visits Rice made to his friends while he had her younger daughter were done without her permission. Adams also accused Rice of having a strong attachment to "young girls." Adams's oldest daughter and two of her daughter's friends testified on Adams's behalf. The chancellor, however, found that their testimony lacked credibility.

¶6.     The chancellor, therefore, awarded both parties joint legal custody of the child, with physical custody remaining with Adams. The chancellor established a visitation schedule and ordered Rice to pay child support. The chancellor ordered Rice to pay one-half of the hospital medical expenses associated with the birth of the child. She also ordered Rice to pay fifteen hundred dollars to Starkville Women's Clinic for services in connection with the birth of the child. Adams now appeals to this Court.

## DISCUSSION

¶7.     As with most issues concerning children, our standard of review is limited. *Floyd v. Floyd*, 949 So. 2d 26, 28 (¶5) (Miss. 2007). The chancery court is granted broad discretion in making its determination of what is in the best interest of the child. *Ellis v. Ellis*, 840 So. 2d 806, 812 (¶24) (Miss. Ct. App. 2003). Accordingly, "this Court will not reverse a chancery court's factual findings . . . where there is substantial evidence in the record supporting [them]." *Floyd*, 949 So. 2d at 28 (¶5) (citations omitted).

¶8.     We first note that Adams's brief is largely incoherent and lacks proper citations to the record. According to Mississippi Rule of Appellate Procedure 28(a)(6), "the argument shall

contain the contentions of [the] appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." This Court is not required to review any issues that are not properly supported by reasons and authority. *O'Hara v. Robinson*, 904 So. 2d 1110, 1111 (¶9) (Miss. Ct. App. 2004). Nevertheless, because this appeal touches on the welfare of a minor child, we review the merits of this action.

### 1. Visitation and Joint Legal Custody

¶9. Adams argues that the chancery court erred by giving Rice unsupervised visitation and joint legal custody. We find that it did not. The chancellor's paramount concern must be the best interest of the child, but the chancellor also should always be attentive to the rights of the noncustodial parent, recognizing the need to maintain a healthy, loving relationship between the child and the noncustodial parent. *Ellis*, 840 So. 2d at 812 (¶24). The chancery court has great discretion in making a determination of what is in the best interest of the child as it relates to visitation issues. *Id*. The law is well settled that a noncustodial parent is reasonably entitled to more than limited and short periods of visitation; restrictions on a noncustodial parent's visitation privileges should only be ordered on a limited basis. *Fields v. Fields*, 830 So. 2d 1266, 1267 (¶6) (Miss. Ct. App. 2002).

¶10. There was conflicting testimony as to why it would be in the best interest of the child that Rice's visitation schedule be supervised. The chancellor determined that these issues of fact favored Rice based on the evidence before the court.

¶11. Likewise, the award of joint legal custody was within the chancellor's discretion.

Miss. Code Ann. § 93-5-24(3) (Rev. 2013). Contrary to Adams's argument, the chancellor did not abuse her discretion in not considering the *Albright* factors.[1] "[T]he *Albright* factors are required only where physical custody is at issue; the chancellor's decision as to the child's best interest as to legal custody alone is less regimented." *Palculict v. Palculict*, 22 So. 3d 293, 298 (¶20) (Miss. Ct. App. 2009). Adams failed to offer credible corroboration that Rice was a threat to the child or could not provide care and support for the child. The chancellor also determined that Adams harbored hostility towards Rice and Rice only wanted a viable relationship with his child. Thus we find no abuse of discretion in this case, and these issues are without merit.

### 2.    Guardian ad Litem

¶12.    Adams next argues that the chancellor committed reversible error because she did not appoint a guardian ad litem. In support of her argument Adams cites *Floyd,* 949 So. 2d at 278 (¶8). *Floyd*, however, is not applicable to this case. In *Floyd*, the chancery court, acting on its own motion, appointed a guardian ad litem after the child made allegations of abuse. The case at hand is not factually similar to *Floyd*.

¶13.    There is nothing in the record indicating that either party asked that a guardian ad litem be appointed or that the chancery court, acting on its own motion, appointed a guardian ad litem. While Adams did accuse Rice of abusing her, she never accused Rice of abusing their child, and the chancellor, therefore, was not obligated to appoint a guardian ad litem under Mississippi Code Annotated section 43-21-121(1) (Rev. 2015). Adams cannot now

---

[1] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

complain of matters she failed to raise at trial. A party is not allowed to raise an issue for the first time on appeal. *Luse v. Luse*, 992 So. 2d 659, 663 (¶12) (Miss. Ct. App. 2008) (citations omitted). Accordingly, this issue is procedurally barred.

### 3. Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)

¶14. Adams argues that the chancery court erred in denying her motion to dismiss for forum non conveniens. "A court of this state which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Miss. Code Ann. § 93-27-207(1) (Rev. 2013). Adams quotes sections of the UCCJEA but provides this Court with no explanation as to why the chancellor should have declined jurisdiction. Likewise, Adams fails to cite any case authority to support her argument. Adams merely concludes that one factor weighs in her favor.

¶15. We are well aware that the chancery court could have declined jurisdiction under section 93-27-207, but that still does not explain why that would have been necessary in this case. First, the record shows that this action began when Adams was still a resident of Mississippi, and Adams was served at her home in Mississippi.[2] Accordingly, under section 93-27-201(1)(a) of the Mississippi Code Annotated (Rev. 2013), the chancery court had jurisdiction because Mississippi was the home state of the child on the date of the

---

[2] We cannot determine how long Adams resided in Alabama before the trial on September 4, 2014. Adams, however, did move to Alabama sometime after she was served at her home in Columbus, Mississippi, on January 23, 2014.

6

commencement of the proceedings. Secondly, the record shows that all of the witnesses, including two of Adams's witnesses, resided in the state of Mississippi. Additionally, all of the issues that were raised in both parties' claims occurred in Mississippi. Lastly, the motion to dismiss for forum non conveniens was made on the day of trial, when both parties and their witnesses were present and ready to proceed. The chancellor had personal jurisdiction over the parties and did not err in exercising jurisdiction over this matter, because Mississippi was the most convenient forum. This issue is without merit.

¶16. **THE JUDGMENT OF THE CHANCERY COURT OF OKTIBBEHA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**