# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CP-00664-COA

**ELLE A. ADAMS**                                                          **APPELLANT**

**v.**

**JOHN LEON RICE**                                                         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/06/2016 |
| TRIAL JUDGE: | HON. DOROTHY WINSTON COLOM |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ELLE A. ADAMS (PRO SE) |
| ATTORNEY FOR APPELLEE: | MARK G. WILLIAMSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 06/12/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., BARNES AND WILSON, JJ.

### BARNES, J., FOR THE COURT:

¶1.     Elle Adams (a.k.a. Elle Aquilera, Ellie Adams, Elle Agundis), appearing pro se, appeals the judgment of the Oktibbeha County Chancery Court, which found that she was in contempt for not allowing John Rice visitation with their minor child. Additionally, the chancery court declined to modify custody. Elle appeals, raising issues of judicial bias, jurisdiction, child custody, and ineffective assistance of counsel. Finding no error, we affirm.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     This appeal stems from John's petition for contempt and modification of child custody filed in November 2015. He alleged that Elle refused to allow him visitation or contact with

their two-year old child, Aaron.[1] John requested that Elle be held in contempt for her failure to follow the court's order and be required to pay his attorney's fees and other costs. Additionally, John requested that the court modify its prior order and award him physical custody of Aaron subject to Elle's restricted and supervised visitation.

¶3. The initial action of this case was filed in December 2013. John filed a petition to establish paternity, custody, and support of Aaron. He initially requested custody of Aaron. Elle filed a counterclaim for custody, child support, and medical expenses incurred from the birth of the child. After a September 2014 hearing, the issues were narrowed to visitation privileges, health insurance, and child support, as John's paternity had been established, and he no longer desired physical custody.

¶4. In its opinion and final judgment of December 2014, the chancery court granted Elle physical custody of Aaron, with both parties having joint legal custody. John was awarded visitation consisting of alternating weekends and specific holidays. At the time, Elle lived in Gulf Shores, Alabama, and John lived in Starkville, Mississippi; so the parties were to exchange the child at the Meridian Police Department. John was ordered to pay child support. Elle appealed the judgment, arguing the chancellor erred in granting unsupervised visitation to John and joint legal custody. *Adams v. Rice*, 196 So. 3d 1086, 1089 (¶9) (Miss. Ct. App. 2016). She also claimed the chancellor should have declined jurisdiction based on

---

[1] A pseudonym has been used to protect the identity of the minor child. The parties were never married, and they dispute the nature of their relationship. John claims they dated and he lived with Elle and her two other children for two and one-half years. Elle, however, claims they never dated or lived together, and that Aaron is the product of rape, after which John continued to harass her. John denies these allegations and claims Elle became hostile after he refused to marry her when she became pregnant.

the doctrine of forum non conveniens. *Id.* at 1090 (¶14). This Court affirmed the chancery court. *Id.* at (¶16).

¶5.     In February 2015, a family court in Jefferson County, Alabama, granted Elle an ex parte temporary protection order due to alleged domestic abuse by John. She claimed she fled to Alabama to escape John's abuse. On August 17, 2015, the Alabama family court made the order permanent, "suspended" John's visitation, and closed the matter.

¶6.     On November 12, 2015, John filed his petition for citation of contempt and modification of custody. In February 2016, Elle filed motions to appoint a court interpreter and to contest the chancery court's jurisdiction under the Uniform Child Custody Jurisdictional Enforcement Act (UCCJEA). In response to the motion for an interpreter, John revealed that Elle actually worked as a Spanish interpreter. He reasoned that she was merely trying to delay the proceedings. As for the jurisdictional motion, John argued that the initial custody determination was made in Oktibbeha County, where he still lived, but Elle unilaterally moved to Alabama with neither a job nor friends with the intent to separate him from his son.

¶7.     On March 14, 2016, Elle obtained another ex parte temporary protection order, this time in Baldwin County, Alabama.[2] On March 15, 2016, John filed a motion for Elle to bring

---

[2] Both the Baldwin County and Jefferson County protection orders were admitted into evidence at the final hearing; however, the Baldwin County order is not included in the record. The transcript stated they could be "found separate and apart from this record in the Office of the Chancery Court of Oktibbeha County, Mississippi." The Baldwin County order, however, was attached to an emergency motion to recuse the chancellor, filed in the Mississippi Supreme Court the day before the final hearing on this action. Elle's motion was dismissed without prejudice because she had not given the chancellor an opportunity to rule on the request to recuse.

their child to the final hearing scheduled for March 31, 2016, because John had not seen him since the September 2014 hearing. Elle failed to appear at the March 22, 2016 hearing on these motions, but she was represented by counsel. The chancellor denied Elle's two motions and granted John's motion. The chancellor ruled that Elle's failure to appear was fatal to both motions, as no testimony or evidence was presented in their support.

¶8. On March 30, 2016, one day prior to the final hearing, Elle filed an answer and counterclaim. She denied that she was in contempt. Elle alleged that she was under the protection of the Baldwin County order and formerly under the protection of the Jefferson County order. Additionally, Elle requested that the court hold John in contempt for failure to pay child support.[3] Elle also filed the aforementioned motion for the chancellor's recusal with the Mississippi Supreme Court.

¶9. At the final hearing on March 31, 2016, Elle again did not appear or produce the child as ordered. She told her attorney the reason for her absence was because Aaron was sick and had a doctor's appointment. Elle's counsel appeared and represented her client in her absence; however, counsel was forced to rest without presenting any testimony or evidence.

¶10. The chancery court issued a detailed opinion and final judgment. The chancellor found she had jurisdiction under the UCCJEA. The chancellor was not convinced that there was a legitimate threat of domestic violence against Elle, finding her claims of rape and abuse were not credible. It was the chancellor's opinion that Elle was using the benefits of domestic protection orders "as a means to circumvent the orders of this court." The

---

[3] John testified that he paid three months of child support but quit paying it when Elle disconnected her telephone and moved without telling him where she went.

chancellor further determined that the protection orders did not thwart jurisdiction: the Jefferson County order had been dismissed; and the Baldwin County protection order, if still in effect, had no authority to interfere with the chancery court's decision. The chancellor noted that John had no notice of the Baldwin County order, nor had the Baldwin county court contacted the Mississippi chancery court to discuss custody or visitation. The chancellor also noted the fact that Elle failed to appear at the March 31 hearing to address the issues she raised by motion.

¶11. The chancellor also found Elle in contempt for failure to comply with the visitation schedule of the December 2014 order. John had absolutely no visitation with his son since September 2014, and the chancellor found Elle had "a pattern [of] misuse [of] the judicial system to thwart John's legal right to visit and bond with his son." Elle was also found in contempt for failing to produce the child at the March 31 hearing. While Elle's attorney informed the chancellor that Elle had texted her numerous times to explain that Aaron had been sick and had a doctor's appointment, no documentation was presented to justify the failure. Because Elle failed to appear and offer proof, John was not held in contempt for failure to pay child support; however, he was ordered to pay the arrearage to Elle. Regarding modification of custody, Elle was denied sole custody of Aaron, and John was denied physical custody of Aaron "at this time." The chancellor found that while Elle's denial of visitation caused a material change of circumstances that adversely affected Aaron, after evaluating the *Albright*[4] factors, she found that a change of custody to John was not in

---

[4] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

Aaron's best interest, as Aaron had yet to develop a bond with John. The visitation schedule of the original custody order was to remain in effect.

¶12. Elle appeals pro se, raising four issues: (1) the chancellor should have recused as she harbored bias against Elle; (2) the chancery court lacked jurisdiction to hear the case due to the Alabama protective orders; (3) the chancellor erred by modifying custody; and (4) Elle received ineffective assistance of counsel.

**ANALYSIS**

¶13. None of Elle's arguments on appeal involve the substantive claims that John raised in his petition for contempt, child support, or modification of physical custody. John argues that Elle is improperly attempting to defend her case for the first time on appeal because of her failure to appear and defend at the March 22 and 31 hearings. He concludes that her issues are procedurally barred because they were not raised before the chancery court. *See Henrichs v. Henrichs*, 32 So. 3d 1202, 1205-06 (¶¶11-12) (Miss. Ct. App. 2009).[5]

¶14. We disagree. Unlike the defendant in *Henrichs*, while Elle failed to appear at the two hearings, she was represented by counsel, and ultimately filed an answer and counterclaim the day before the final hearing. Additionally, the arguments Elle raises before this Court do not relate to insufficient findings of fact by the chancellor as in *Henrichs*. Here, the chancellor issued a detailed opinion and final judgment explaining her ruling, which included

---

[5] In *Henrichs*, the defendant did not respond to the divorce petition in any way or appear in open court. *Henrichs*, 32 So. 3d at 1203-04 (¶¶3-4). The plaintiff was granted a divorce and related requests, as the defendant presented no testimony or evidence. *Id.* at 1204 (¶5). The defendant complained on appeal that the chancellor failed to make specific findings of fact, but this Court found the argument lacked merit due to the defendant's failure to appear and defend. *Id.* at 1205-06 (¶¶9-12).

over four pages on the jurisdictional issue. Both judicial recusal and jurisdiction were raised before the chancery court; therefore, they are not procedurally barred. However, as will be detailed below, Elle's joint-custody and ineffective-assistance-of-counsel claims were not raised before the chancery court; accordingly, those issues are barred from our review.

### 1. Judicial Recusal

¶15. Elle argues that the chancellor should have recused herself because Elle had filed a federal lawsuit and judicial complaint against her alleging bias, discrimination, and misconduct.[6] Elle reasoned that her legal actions against the chancellor would make her "even more biased" and "incapable of making appropriate decisions"; thus, recusal was necessary.

¶16. Mississippi Rule of Appellate Procedure 48B explains the proceedings on a motion to disqualify the trial judge. If a trial judge denies a motion seeking his or her recusal, the movant may seek review of the judge's action by the Mississippi Supreme Court. *Id.*

¶17. The day before the hearing, Elle filed a pro se emergency motion to recuse the chancellor before the supreme court, making many of the same allegations as on appeal. Additionally, she argued that the chancellor's "hostile acts" infringed upon her civil rights because she was denied a Spanish interpreter at the March 31, 2016 hearing. Further, she claimed the chancellor and her attorney had "ex parte communication" which was "disparaging and inappropriate," questioning her ability to understand English, among other

---

[6] Neither of these documents is in the appellate record. It is well established that "Mississippi appellate courts may not consider information that is outside the record." *Hardy v. Brock*, 826 So. 2d 71, 76 (¶26) (Miss. 2002).

matters. The Mississippi Supreme Court dismissed the motion the same day, without prejudice, because Elle had failed to first seek recusal from the chancellor herself before asking for the supreme court's review and failed to serve the chancellor with the motion.[7]

¶18. The rule concerning disqualification of a judge is contained in Canon 3(E)(1)(a) of the Mississippi Code of Judicial Conduct. It states that "[j]udges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances . . . including but not limited to instances where . . . the judge has a personal bias or prejudice concerning a party . . . ." The Mississippi Supreme Court has held "that the objective reasonable person knowing all of the circumstances is the proper standard" to determine if a judge should have recused herself. *Dodson v. Singing River Hosp. Sys.*, 839 So. 2d 530, 532-33 (¶9) (Miss. 2003). "[R]ecusal is required when the evidence produces a reasonable doubt as to the judge's impartiality." *Id.* at 533 (¶13). However, it is presumed that judges are qualified and unbiased. *Id.* at (¶10). The appellate court applies a manifest-error standard when reviewing a judge's refusal to recuse. *Sullivan v. Maddox*, 122 So. 3d 75, 81 (¶15) (Miss. Ct. App. 2013) (citing *Bredemeier v. Jackson*, 689 So. 2d 770, 774 (Miss. 1997)).

¶19. Elle claimed the chancellor made disparaging comments about her and her family in open court and "ex parte communication" with one of Elle's numerous attorneys before the chancery court. Also, apparently because of the chancellor's unfavorable ruling, Elle claims

---

[7] Elle complains in her appellate brief that her motion for recusal was never heard or ruled upon, but this is incorrect. Obviously, the motion filed with the supreme court was ruled upon. Further, the chancery court docket does not indicate that Elle ever filed a motion for recusal in that court, as directed.

8

that the chancellor had an "unconscious bias" against her as exhibited at the March 31 hearing (which Elle did not attend). Further, Elle argues that the chancellor could not be impartial knowing that Elle had filed a federal lawsuit and state bar complaint against her. Elle requests the judgment against her be reversed due to the alleged evidence of bias.

¶20. At the March 31, 2016 hearing, the chancellor acknowledged for the record that while she had not been served with a federal lawsuit, she was aware that Elle had filed one in Alabama against her, John, and the cities of Starkville and Columbus, Mississippi. The chancellor stated for the record that she read the complaint but found it proper to move forward with the hearing.

¶21. After reviewing the transcripts, we do not find that the chancellor made any disparaging personal comments about Elle. Nor did the transcript indicate any evidence of bias towards Elle, who failed to attend two hearings; one on motions that she filed on March 22, and the final hearing on March 31. However, the chancellor did find Elle's "attempts to manipulate the judicial system . . . appalling." We cannot say that it was disparaging or prejudicial that the chancellor reprimanded Elle on the record for not pursuing her own defense. Moreover, Elle did not file a motion to recuse the chancellor in the chancery court even after the Mississippi Supreme Court entered its order. Accordingly, the issue is barred. Further, there is no evidence that the chancellor's impartiality might be reasonably questioned; therefore, the issue is also without merit.

## 2. Jurisdiction

¶22. Next, Elle argues that the chancellor lacked jurisdiction to decide both the initial

custody of Aaron and John's subsequent petition to modify custody. "Whether the chancery court had jurisdiction to hear a particular matter is a question of law" that this Court reviews de novo. *In re Guardianship of Z.J.*, 804 So. 2d 1009, 1011 (¶9) (Miss. 2002).

¶23.    Elle makes several arguments regarding the chancery court's alleged lack of jurisdiction to determine the initial petition filed by John on December 20, 2013.  Elle has, however, already challenged this initial jurisdiction, and this Court found that her claims to be without merit.[8]  It is well established that after a matter is adjudicated, the petitioner is barred from relitigating the claim under the doctrine of res judicata, which "reflects the refusal of the law to tolerate a multiplicity of litigation." *Little v. V & G Welding Supply Inc.*, 704 So. 2d 1336, 1337 (¶8) (Miss. 1997).  "Res judicata bars all issues that might have been (or could have been) raised and decided in the initial suit, plus all issues that were actually decided in the first cause of action." *Id.*  Accordingly, Elle's jurisdictional arguments related to the initial case are barred.  However, Elle is not barred from challenging the chancellor's jurisdiction of the instant case's petition for contempt and to modify custody.

¶24.    In this matter, Elle, represented by counsel, filed a motion contesting jurisdiction under the UCCJEA on February 24, 2016.  She submitted "that Mississippi no longer has

---

[8] During the initial action, Elle also made several jurisdictional challenges. *Adams*, 196 So. 3d at 1090 (¶¶14-16).  Elle filed a motion to dismiss, arguing the chancellor lacked jurisdiction because Elle and her son were residents of Lowndes County, which was denied. Then, the day of trial, Elle made a motion to dismiss for forum non conveniens, which was also denied, and which this Court affirmed. *Id.*  As *Adams* explains, when the initial action began, Elle, John, and Adams all resided in Mississippi; thus Mississippi was considered the "home state" under Mississippi Code Annotated section 93-27-201(1)(a) (Rev. 2013), even though Elle moved to Alabama sometime after she was served in January 2014. *Id.* at (¶15).

exclusive, continuing jurisdiction over the child" because of her move to Alabama;[9] therefore, she argued that the chancery court "is precluded from modifying its original [o]rder as it no longer has jurisdiction to make an initial child custody determination under [section] 93-27-201."[10] She argued Alabama is now Aaron's "home state" as defined by Mississippi Code Annotated section 93-27-102(g) (Rev. 2013). As proof, Elle claimed she lives and works in Alabama, Aaron is being reared in Alabama, all of Aaron's medical and daycare records are in Alabama, and Aaron has been a permanent resident there since January 2014. Moreover, she noted that in August 2015, the Jefferson County protection order was converted from temporary to permanent. She claimed the above evidence and protection order show neither she nor Aaron had the statutorily required "significant connections" with Mississippi to establish jurisdiction.

¶25. On appeal, Elle claims that she is still under the protection of the Jefferson County and Baldwin County orders. However, the record indicates that the Jefferson County order was dismissed in December 2015, and the status of the Baldwin County order is unknown.[11] Elle

---

[9] When Elle was served with John's initial petition, she and Aaron were still residents of Mississippi. Shortly thereafter, Elle and Aaron moved to Alabama, becoming permanent residents around the end of January 2014.

[10] Section 93-27-201(1) (Rev. 2013) governs jurisdiction to make an initial custody determination.

[11] Elle obtained the Baldwin County protection order on March 14, 2016, after her motion contesting jurisdiction was filed. At the March 31, 2016 hearing, Elle's attorney stated the Baldwin County protection order was still in effect "as far as [she] knew." However, John was never served with the order and had no knowledge of it. Further, there is no proof in the record regarding whether it is still in effect. The chancellor found that even if that order was still in effect, it would not interfere with jurisdiction of the Oktibbeha Chancery Court.

argues that because the chancellor "disregarded" these Alabama orders, she was deprived of various constitutional rights, including due process, equal protection, and full faith and credit.

¶26. "Under the UCCJEA, only one court may assert jurisdiction after an initial custody order has been entered." Deborah H. Bell, *Bell on Mississippi Family Law* § 18.10 at 459 (1st ed. 2004). The "court issuing [the] initial decree has continuing subject matter jurisdiction over the action and continuing personal jurisdiction over the parties. No other court may modify the decree." *Id.* (citing Miss. Code Ann. § 93-27-202(1) (Rev. 2013)). Section 93-27-202(1)(a) provides that a Mississippi court that has made an initial child-custody determination shall have "exclusive, continuing jurisdiction over the determination until:"

> (a) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships . . . .

Elle argues that there is no longer a "significant connection" among her, Aaron, and Mississippi, and "all pertinent evidence" relating to the child is in Alabama. She claims under section 93-27-202(1)(a) that the child's "care, protection, training, and personal relationships" are now in Alabama rather than Mississippi.

¶27. We disagree. The chancery court had exclusive, continuing jurisdiction over the action under section 93-27-202(1)(a). Further, there was no order from a Mississippi court determining a lack of significant connections with this state. Additionally, section 93-27-202(1)(b), which allows a court of this state or another state to determine jurisdiction if

12

neither parent resides within the state, is inapplicable, as John still resides in Mississippi. It was within the chancellor's discretion to determine that Mississippi should retain jurisdiction even though Elle and the child had moved to Alabama. Accordingly, the chancery court properly retained jurisdiction.

¶28. Elle also argues that certain "required disclosures" pertaining to jurisdiction were not filed; therefore, the chancellor should have dismissed the action. Mississippi Code Annotated section 93-27-209(1) (Rev. 2013) provides that, in child-custody proceedings, each party in its first pleading or in an attached affidavit must provide certain information under oath as to the child's present address and other matters. Elle cites *White v. White*, 26 So. 3d 342 (Miss. 2010), a child-custody modification case, as support. In *White*, even though the petitioner failed to provide this information, the Mississippi Supreme Court found it was not fatal to jurisdiction for two reasons: the chancery court's jurisdiction is set by the Mississippi Constitution and cannot be diminished by statute; and under the plain language of section 93-27-209(2), the court is not required to stay the proceedings.[12] *Id.* at 347 (¶13).

¶29. John provided this information in his initial petition. In his petition to modify custody, he could not provide the information because, as he explained, he was unaware of where Elle and Aaron were residing at that time. Elle, in response, claimed that she did not reveal her address and other information in her initial answer or in this action due to the Alabama protection orders. Since any failure to provide this information is not fatal to jurisdiction,

---

[12] The statute states: "If the information required by subsection (1) is not furnished, the court, upon motion of a party or its own motion, *may* stay the proceeding until the information is furnished." Miss. Code Ann. § 93-27-209(2) (emphasis added).

and it is within the discretion of the chancellor to go forward with the proceeding, this argument is without merit.

¶30. We conclude that the chancery court properly retained continuous exclusive jurisdiction over this matter.

### 3. Custody

¶31. Elle argues that the chancellor erred in granting John joint legal custody of the minor child, claiming that she should have sole legal and physical custody. However, neither party raised the issue of legal custody in this case. In her final judgment, the chancellor stated that both parties had requested custody modification: John requested physical custody with supervised visitation by Elle, and Elle requested sole custody, thereby eliminating joint legal custody as previously ordered. Both requests were denied. However, we cannot find in the record where Elle requested modification of custody.[13] It appears that only John requested modification of physical custody to him. Elle merely reasserts her argument from her first appeal related to John's initial petition, which is improper. As stated earlier, "[r]es judicata bars all issues . . . that were actually decided in the first cause of action." *Little*, 704 So. 2d at 1337 (¶8).

¶32. The chancellor, however, thoroughly analyzed modification of custody for both parties, finding Elle failed to appear and provide any proof of a material change of circumstance that was adverse to the child. The chancellor stated the primary reason John was now seeking a custody change was Elle's continued refusal to allow him to exercise

---

[13] Elle's counterclaim requested payment of back child support and attorney's fees, and to have John incarcerated for contempt for failure to pay child support.

court-ordered visitation. The chancellor found that Elle's denial of John's visitation caused a material change in circumstances that adversely affected Aaron because the child "irretrievably lost" the father/son bond that he was entitled to have. The chancellor made a detailed analysis of the *Albright* factors. Even though most factors favored John or neither party, and none favored Elle, the chancellor opined that removing Aaron from the custody of his mother when he was so young and without any relationship and/or bond with John would not be in the child's best interest. Accordingly, she declined to modify custody to John "at this time," warning that any interference by Elle of John's visitation would be viewed unfavorably. The chancellor also denied Elle's alleged request for termination or limitation of John's visitation privileges—a request we also cannot find in the record.

¶33. Elle complains here as she did in her first appeal that the chancellor failed to address the *Albright* factors. However, Elle appears to be referencing the first action, where the chancellor did not analyze the *Albright* factors.[14] Here, the chancellor's April 2016 judgment analyzed the *Albright* factors in great detail. Accordingly, this issue is without merit.

### 4. Ineffective Assistance of Counsel

¶34. Finally, Elle argues that her counsel was ineffective. In January 2016, the attorney at issue[15] entered an appearance. She later represented Elle at the hearing on March 31, 2016, where Elle failed to appear. Elle complains that her counsel "belittled" and "mocked"

---

[14] In *Adams*, this Court found no error because only legal custody was at issue, and thus an *Albright* analysis was not needed. *Adams*, 196 So. 3d at 1089 (¶11).

[15] The record includes pleadings from the initial action, which shows Elle hired and fired several attorneys or represented herself.

her at the beginning of the hearing by explaining to the chancellor that Elle had contacted her several times about being unable to travel to the hearing due to a sick child. Elle also criticized her counsel for advising her that she would "lose the case" if she was absent from the hearing.

¶35. Elle's argument is procedurally and substantively without merit. The Sixth Amendment right to effective assistance of counsel is triggered in criminal proceedings, not family-law matters. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (discussing the standard of ineffective-assistance-of-counsel claims in the context of criminal proceedings). Notwithstanding the impropriety of the claim, this Court has reviewed the transcript and found, as the chancellor noted at the hearing, that Elle's attorney "did a good job" representing Elle's interests in her absence. Counsel apparently tried to impress upon Elle the importance of her appearance and the impact her absence could have on the outcome of the case. Elle's accusations about her counsel are unfounded, and her argument is without merit.

¶36. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**