# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CP-01757-COA

IN THE MATTER OF THE ESTATE OF ZONA       APPELLANTS
MAE OLIVER, DECEASED: SANDRA JEAN
OLIVER AND JAMES HOWARD OLIVER

v.

JAMES C. OLIVER JR., TERRY MICHAEL       APPELLEES
CARNEY JR., AND MELISSA M. CARNEY

| | |
|---|---|
| DATE OF JUDGMENT: | 11/14/2016 |
| TRIAL JUDGE: | HON. VICKI B. DANIELS |
| COURT FROM WHICH APPEALED: | MONTGOMERY COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | SANDRA JEAN OLIVER (PRO SE) |
| ATTORNEYS FOR APPELLEES: | ROGER ADAM KIRK |
| | J. LANE GREENLEE |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 04/16/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2016-CP-01759-COA

SANDRA JEAN OLIVER AND JAMES       APPELLANTS
HOWARD OLIVER

v.

TERRY MICHAEL CARNEY JR., MELISSA M.       APPELLEES
CARNEY, JANET CAROL MCLELLAND, AND
JAMES DONALD OLIVER

| | |
|---|---|
| DATE OF JUDGMENT: | 09/30/2016 |
| TRIAL JUDGE: | HON. VICKI B. DANIELS |
| COURT FROM WHICH APPEALED: | MONTGOMERY COUNTY CHANCERY COURT |

ATTORNEY FOR APPELLANT:    SANDRA JEAN OLIVER (PRO SE)
ATTORNEYS FOR APPELLEES:    ROGER ADAM KIRK
    J. LANE GREENLEE

NATURE OF THE CASE:    CIVIL - WILLS, TRUSTS, AND ESTATES
DISPOSITION:    AFFIRMED IN PART, AND DISMISSED IN
    PART - 04/16/2019

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CARLTON, J., FOR THE COURT:**

¶1. This is a consolidated appeal concerning three cases originating in the Montgomery County Chancery Court, all of which involve the division of real and personal property belonging to Zona Mae Oliver, who died intestate on March 11, 2004. The three actions are a partition action and a fraud action (consolidated in the chancery court after entry of a final judgment in the partition action), and an estate action. The estate action was initiated when Sandra Oliver petitioned the chancery court to appoint her as the administratrix of the Zona Mae Oliver estate, to require an accounting of all real and personal property in that estate, and for other relief. For the reasons detailed below, we affirm the chancery court's final judgment of partition; we dismiss the fraud action appeal as premature because no final judgment has been entered in that action, without prejudice to Sandra Oliver's right to pursue further proceedings after entry of a final judgment in the fraud action; and we affirm the chancery court's dismissal of the estate action on res judicata grounds.

**STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY[1]**

---

[1] We address only those pleadings and proceedings relevant to our disposition in this consolidated appeal.

¶2.    As mentioned above, Zona Mae Oliver died intestate on March 11, 2004. Her two sons, James Howard Oliver (Howard) and James Calvin Oliver (J.C.) jointly requested an attorney to file a determination-of-heirship petition. In a judgment entered May 24, 2004, Howard and J.C. were determined to be Zona Mae's only living heirs. The assets remaining in the estate were her residence and the surrounding 365 acres of land located in Montgomery County, plus personal property inside the home that was valued at approximately $70,000.

¶3.    On June 20, 2007, J.C. filed a petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Southern District of Mississippi, Case No. 07-50836. On June 11, 2012, J.C. received a discharge after completion of his Chapter 13 plan, and the case was closed on December 11, 2012.

¶4.    In the meantime, by quitclaim deed dated May 11, 2009, Howard conveyed his interest in the Zona Mae Oliver property to his daughter and the appellant, Sandra Oliver. After J.C. received his discharge in bankruptcy, by warranty deed dated October 11, 2012, J.C.'s daughter and his attorney-in-fact, Janet Carol McLelland, conveyed J.C.'s interest in the property to the appellees, J.C.'s granddaughter (and Janet's daughter), Melissa McLelland Carney, and her husband, Terry Michael Carney, Jr. (the Carneys). The three separate cases that make up this appeal were subsequently filed in Montgomery County Chancery Court. We begin by briefly summarizing each case.

   I.    The Partition Action (Cause No. 13-cv-00088)

¶5.    The Carneys filed a complaint for partition on May 10, 2013, against Sandra Oliver

3

(the partition action).[2] The Carneys requested that the property in the Zona Mae Oliver estate be partitioned into two equal shares, with each party to pay their share of court costs, ad valorem taxes for 2013, and all other fees and costs incurred to complete the action. This case was assigned to Chancellor Mitchell M. Lundy Jr., who recused himself on August 4, 2014. The partition case was then re-assigned to Chancellor Vicki B. Cobb n/k/a Chancellor Daniels.

## II. The Estate Action (Cause No. 13-cv-00125)

¶6. On July 16, 2013, at the same time Sandra filed a response in the partition action, Sandra and her father, Howard, initiated a separate proceeding by filing their Petition to Appoint Administratrix, Account for Lost Property, to Account for Misappropriation of Estate Assets with Power-of-Attorney and for Issuance of Letters of Administration (the estate action). Sandra and Howard named J.C. and the Carneys as defendants in this proceeding. This case was assigned to Chancellor Daniels.

## III. The Fraud Action (Cause No. 15-cv-00093)

¶7. Approximately two years later, on June 10, 2015, Sandra and Howard sued the Carneys, J.C., Janet, and Donald Oliver for fraud (the fraud action).[3] This case was assigned to Chancellor Percy Lynchard Jr. In her fraud lawsuit, Sandra alleged that J.C., beginning

---

[2] The Carneys also named as defendants "all unknown persons or entities claiming any interest in the property which is the subject of this case." By judgment dated June 18, 2013, the chancery court entered a default judgment against these defendants, and ordered that no additional process shall be required on them.

[3] For ease of reference, we collectively refer to Plaintiffs Sandra and Howard as Sandra.

4

in 1997, converted funds and property belonging to Zona Mae Oliver to his personal use during her life and after her death, up until J.C., by and through Janet as his attorney-in-fact, filed for Chapter 13 bankruptcy in June 2007. According to Sandra's complaint, J.C. obtained personal loans secured by 120 acres belonging to Zona Mae Oliver which was subsequently lost in a foreclosure sale. Further, Sandra alleged that J.C. received his final discharge from the bankruptcy court on June 11, 2012, and that she and her father "were barred from initiating any proceedings against [J.C.] because of the stay which was in effect in the bankruptcy action." After a final judgment of partition was entered in the partition action, the partition and fraud cases were consolidated before Chancellor Daniels on November 23, 2016, as detailed below.

## IV. Proceedings in the Partition and Fraud Actions

¶8. In response to the Carneys' partition complaint, Sandra moved to stay the partition action pending the outcome of the equitable issues raised in her petition to open the Zona Mae Oliver estate filed on July 16, 2013. In her motion, Sandra repeated the same allegations she made in her estate petition regarding J.C.'s alleged waste and depletion of the estate. Her motion also included a claim that she had a right to an equitable offset in the property interest that J.C. deeded to the Carneys. The Carneys contested Sandra's motion. During an October 22, 2013 hearing, Sandra testified at length regarding J.C.'s alleged depletion of the estate, including the 120 acres belonging to the estate that J.C. allegedly lost in foreclosure, and the money that J.C. allegedly wrongly appropriated for the sale of timber, cattle, and other personal property belonging to the Zona Mae Oliver estate. The chancery

5

court denied Sandra's motion to stay the partition action in an order dated November 18, 2013.

¶9.    An agreed order allowing Sandra's original counsel's request to withdraw was entered on December 3, 2013.  Sandra employed new counsel.  An order releasing Sandra's second lawyer from representing her was entered approximately five months later.

¶10.    Sandra's third lawyer filed an entry of appearance on July 22, 2014, and on July 25 Sandra's counsel filed on her behalf a motion controverting the partition action, and seeking an apportionment relating to prior encumbrances and for an adjustment of the equities between the parties (the motion to controvert).  This motion again detailed Sandra's allegations of J.C.'s alleged wrongful sale of timber, cattle, and other personal property belonging to the estate of Zona Mae Oliver, and J.C.'s alleged wrongful pledging of 120 acres of real property belonging to Zona Mae to secure loans.  Sandra, in this motion, requested that the court enter an order granting her "one half of the property sought to be partitioned plus such additional portions of the property to which she is entitled to receive in equity to prohibit an unjust enrichment of the plaintiffs [the Carneys] and provide for just compensation to the defendant because of the damages suffered by defendant for the fraudulent and wrongful actions of James C. Oliver, Jr."[4]

---

[4] The record also contains a motion Sandra filed pro se, indicating it was served on May 21, 2014, but does not appear to have been filed until June 16, 2015.  In her pro se motion, Sandra sought to correct facts stated at the October 22, 2013 hearing on her motion to stay the partition case, and requested the court to allow additional evidence relating to J.C.'s alleged fraudulent acts, and to disallow any partition of the property at issue due to J.C.'s alleged fraudulent acts (the motion to correct facts and for equitable partition). To avoid repetition, we will discuss the details of this motion below. In their response to Sandra's motion to correct facts, the Carneys argued, among other things, that the motion

¶11.    In September 2014, the Carneys moved, in limine, for an order preventing Sandra from offering any testimony or evidence relating to any claim that she may have due to the actions of James C. Oliver, Jr., as set forth in her motion to controvert. On December 12, 2014, the Carneys filed the affidavit of Tarik O. Johnson, a bankruptcy attorney who, according to his affidavit, was retained by the Carneys to render his professional opinion on the issue of whether Sandra's claim against J.C. and his successors-in-title, the Carneys, was barred by the discharge in bankruptcy granted to J.C. by the United States Bankruptcy Court for the Southern District of Mississippi in Case No. 07-50836 on June 11, 2012. Johnson opined that Sandra's claims were barred by J.C.'s June 11, 2012 discharge in bankruptcy.

¶12.    Sandra's motion to controvert, the Carneys' motion in limine, and all issues relevant to issues raised in the Carneys' motion in limine that were addressed in Sandra's pro se motion to correct facts and for equitable partition served May 21, 2014, were noticed for hearing.  At the February 2, 2015 hearing, counsel for Sandra clarified that both Sandra's motion to controvert, and her pro se motion to correct facts and for equitable partition, to the extent it related to the issues in the Carneys' motion in limine, were before the court.  The chancellor stated on the record that she had "read the entire [court] file and not just the motions that are noticed for hearing today . . . [and that she] under[stood] very thoroughly what the issue are, the issues that [Sandra] is trying to raise . . . ." After argument, the court granted the Carneys' motion in limine, finding that any claim Sandra's father, Howard (Sandra's predecessor-in-title), may have had against J.C., the Carneys' predecessor-in-title,

---

was untimely, and that the relief requested was redundant of the relief sought in the motion to controvert filed by Sandra's counsel on her behalf in July 2014.

were barred by J.C.'s discharge in bankruptcy. She further found that any claim Sandra derives through Howard was also barred. The chancery court entered its corrected order granting the Carneys' motion in limine on March 20, 2015.[5]

¶13. Less than two weeks later, on June 23, the Carneys moved to transfer the fraud action and consolidate the fraud and partition cases before Chancellor Daniels in Cause No. 13cv88 (the original partition action). On June 29, Sandra's counsel, James Powell, submitted to Chancellor Lynchard a proposed agreed order to transfer and consolidate the fraud and partition cases before Chancellor Daniels. The agreed order was signed by Mr. Powell and counsel for the Carneys, indicating their agreement that the order be entered. In his cover letter to Chancellor Lynchard, Sandra's counsel explained that the Carney's counsel had filed the motion to transfer and consolidate and that "[he (Sandra's counsel) was] in agreement with [the Carney's counsel] on that issue." Nevertheless, the record reflects that this agreed order appears to have been lost, and was not entered at that time.[6]

¶14. An agreed order to stay the partition proceedings, however, was entered in the partition case on July 2, 2015. This order provided for a ninety-day stay within which Sandra could seek to reopen the J.C. bankruptcy proceedings to assert the claims she asserted against him in the fraud lawsuit. No action was taken by Sandra during the ninety-day time period.

---

[5] The first order entered by the court inadvertently provided that the Carneys' expert witness had testified at the hearing. In the corrected order, the chancellor clarified that the Carneys' expert witness's affidavit had been admitted at the hearing and that he did not testify.

[6] As detailed below, the agreed order to transfer and consolidate the partition and fraud actions was signed by Chancellor Lynchard and entered on November 23, 2016.

8

¶15.    The first hearing on the partition lawsuit was set for February 1, 2016.  On that date, however, Sandra moved, pro se, to reinstate the stay pending resolution of her motion to reopen J.C.'s bankruptcy estate, and other related motions, which Sandra did not file in the bankruptcy matter until January 29, 2016, over three months past the ninety-day stay entered on July 2, 2015.  In her motion to reopen the bankruptcy estate,[7] Sandra reiterated the same claims against J.C. described above, namely:  (1) J.C.'s use of the 120 acre parcel as collateral on a mortgage; (2) J.C.'s alleged conversion of cattle, funds, and various pieces of Zona Mae's personal property; and (3) the cutting and sale of timber.

¶16.    At the February 1, 2016 first partition hearing, which also included a hearing on Sandra's motion to reinstate the stay,[8] the chancellor stated on the record that she had read Sandra's pro se motion for stay, and the bankruptcy pleadings furnished by Sandra's counsel and made exhibits at the hearing.  The chancellor further noted that Sandra took no action in the bankruptcy proceeding during the initial ninety-day stay granted by the court.  The chancellor denied Sandra's motion to reinstate the stay.

¶17.    Counsel for both parties represented to the chancery court that the parties had reached an agreement as to how the partition would be conducted, as set forth in the proposed first judgment of partition.  The chancellor signed this judgment.  The first judgment of partition appointed two commissioners to prepare a valuation and partition report, and it also provided

_____

[7] The motions filed by Sandra in the bankruptcy proceeding were made a part of the record at the February 1, 2016 hearing on Sandra's motion to reinstate the stay.

[8] Though Sandra filed her motion to reinstate the stay pro se, she was represented by counsel during this time.

9

that a final hearing would be conducted confirming the report, and addressing all other issues raised by the pleadings, including any taxes paid by Sandra.

¶18.    Sandra's counsel also stated on the record that although Sandra had filed a motion to reconsider the court's ruling granting the Carneys' motion in limine to exclude evidence or argument about any claims Howard or Sandra had against J.C., they had decided not to pursue that motion because those issues "had to be determined by the [b]ankruptcy [c]ourt."

¶19.    The commissioners' report was filed on May 16, 2016, and on September 27, 2016, at the final partition hearing, the chancery court approved the commissioners' report, and heard testimony regarding payment of taxes on the property. The final judgment of partition was entered on September 30, 2016, partitioning the western half of the property to Sandra and the eastern half of the property to the Carneys; addressing payment of the commissioners' fees, attorney fees, other costs; setting forth the stipulated amount of $5,350.15 to be credited to the Carneys for payment on ad valorem taxes; and denying Sandra's request for reimbursement for certain property taxes paid in 2006-08.

¶20.    In this same time-frame, on September 28, 2016, the bankruptcy court denied Sandra's motion to reopen J.C.'s Chapter 13 bankruptcy proceeding to assert her claims regarding J.C.'s use of the 120-acre parcel as collateral on a mortgage, and his alleged wrongful conversion of cattle, funds, timber and various pieces of Zona Mae's personal property.[9] The

---

[9] We take judicial notice of the order denying Sandra's motion to reopen J.C.'s Chapter 13 bankruptcy proceeding entered in the United States Bankruptcy Court for the Southern District of Mississippi. *In re Oliver*, Ch. 13 Case No. 07-50836 (S.D. Miss. Sept. 28, 2016); *see also In re Oliver*, Ch. 13 Case No. 07-50836, 2017 WL 1323467 (S.D. Miss. Apr. 10, 2017). *See Teal v. Jones*, 222 So. 3d 1052, 1057-58 (¶21) (Miss. Ct. App. 2017) (taking judicial notice of a record that was "readily available via [the electronic filing

bankruptcy court found that Howard had adequate notice of J.C.'s bankruptcy to file a nondischargeability action, and failed to do so or to request an extension of the deadline. For this reason, the court found that Sandra, on behalf of Howard, was now time-barred from filing a nondischargeability action. The bankruptcy court also held that "most, if not all, of the alleged debts asserted by Sandra could not have been excepted from discharge anyway. Sandra essentially asserts claims for conversion of Zona Mae's personal property, including the cattle, antique furniture, a car, and the funds in a checking account, as well as a claim for trespass to timber." Under the circumstances in Sandra's case, the court held, these claims are not excepted from discharge in a Chapter 13 case.

¶21.    On October 10, 2016, Sandra filed, pro se, a motion for new trial, or, alternatively, to alter or amend the final judgment for partition, accompanied by a supporting brief filed November 1, 2016, which included over 110 pages of attachments. The Carneys moved to strike Sandra's pro se brief due to "scandalous content." Sandra filed her pro se opposition to that motion on November 9, 2016. At the November 14, 2016 hearing on these motions, the chancery court denied Sandra's motion for a new trial or to alter or amend the final judgment, and also observed at that hearing that the bankruptcy court's September 28, 2016 ruling barred Sandra's claims. The chancery court also granted the Carneys' motion to strike Sandra's pro se brief supporting her motion for a new trial, and entered its orders on both of these rulings on November 14.

¶22.    On October 17, 2016, the Carneys moved to dismiss Sandra's fraud lawsuit and

system] and [that could not] reasonably be disputed.").

11

sought sanctions against Sandra pursuant to Rule 11 of the Mississippi Rules of Civil Procedure for filing a frivolous complaint. Sandra filed her pro se opposition, and the Carneys moved to strike Sandra's brief supporting her opposition due to "scandalous content." The chancery court has not issued any ruling or judgment on the Carneys' motion to dismiss the fraud lawsuit.

¶23. The record reflects that on November 11, 2016, counsel for the Carneys filed a motion in the fraud case (before Chancellor Lynchard) seeking entry of the agreed order to consolidate the fraud and partition cases into Cause No. 13-cv-00088 (the partition case) that had been submitted to the court on June 29, 2015 by Sandra's counsel at the time, James Powell. The agreed order signed by the Carneys' counsel and Mr. Powell, together with Mr. Powell's June 29, 2015 cover letter to Chancellor Lynchard submitting the agreed order, were attached as exhibits to the Carney's motion. Sandra opposed the Carneys' motion for entry of the agreed order. In her opposition, Sandra admitted that as early as July 2015, she knew that the Carneys had filed their original motion to transfer and consolidate the partition and fraud cases. She also asserted, however, that she had not given Mr. Powell permission to agree to the transfer and consolidation.

¶24. On November 23, 2016, Chancellor Lynchard, who was assigned to the fraud case, signed and entered the agreed order transferring the fraud case to Chancellor Daniels and consolidating the partition and fraud cases for further proceedings before Chancellor Daniels.

¶25. On November 29, 2016, Sandra filed a pro se motion in the fraud action entitled "Motion to Appoint Temporary Administrator for Estate of Zona Mae Oliver and Issue

12

Letters of Administration; Motion to Join the Estate of Zona Mae Oliver as Plaintiff; Motion for Temporary Injunction in Partition Claim." In this motion Oliver asked the chancellor to appoint her as the temporary administrator of the Zona Mae's estate and join the estate as a party. Sandra also requested that the chancellor enter an injunction in the partition lawsuit, pending appeal of the final judgment of partition, to preserve the real property that is at issue in all three lawsuits. The record reflects that the chancery court did not rule on this motion before Sandra filed notices of appeal in the partition and fraud cases.

¶26. Sandra filed separate notices of appeal in the partition and fraud cases on December 13, 2016. The notice of appeal Sandra filed in the partition action appealed the final judgment of partition entered on September 30, 2016 (also listing a number of other orders and rulings entered in that action prior to the final judgment of partition) and the order denying Sandra's motion for a new trial or, alternatively, to alter or amend the judgment entered on November 14, 2016.

¶27. The notice of appeal Sandra filed in the fraud action appealed only the order granting the Carneys' motion to enter an agreed order to transfer and consolidate the fraud case with the partition case entered November 23, 2016.[10]

---

[10] After entry of the agreed order allowing transfer and consolidation, Sandra moved to set aside the order on November 29, 2016. The Carneys responded, and the chancery court entered its order denying Sandra's motion to set aside its agreed transfer and consolidation order on December 8, 2016. There was no mention of the order denying the motion to set aside the agreed order in Sandra's fraud action notice of appeal, nor does Sandra raise any issues specific to her motion to set aside the agreed order in her appellate briefing. In any event, "where [a] Rule 60 motion is filed and disposed of within the time allowed for appeal from the underlying judgment, [it is only when] . . . the notice of appeal speaks to the judgment *and the order disposing of the motion*, [that] one notice of appeal is sufficient to bring to this court both the judgment and the Rule 60 order." *Thornton v.*

13

### V. Proceedings in the Estate Action

¶28. As noted above, Sandra and Howard filed the estate action on July 16, 2013. They petitioned the court to (1) appoint Sandra as administratrix of the Zona Mae Oliver estate; (2) order an accounting of certain property, including timber, cattle, and other personal property, allegedly sold by J.C. during Zona Mae's lifetime, and certain real property owned by Zona Mae that J.C. allegedly mortgaged and lost through foreclosure; and (3) ascertain an equitable amount to offset any partition of the property to adjust for "the waste committed by [J.C.]." No action was taken in the estate case until October 17, 2016, when the Carneys moved to dismiss Sandra's petition for failure to state a claim or lack of jurisdiction under Rule 12(b) of the Mississippi Rules of Civil Procedure. The Carneys argued that the claims Sandra made in her estate case were barred by the chancery court's prior adjudication on these issues and entry of the Final Judgment of Partition in the partition action on September 30, 2016, and the bankruptcy court's prior adjudication on these issues in the September 28, 2016 order entered in J.C.'s Chapter 13 bankruptcy proceeding.

¶29. Sandra filed a pro se response, among other things, that the attorney for the Carneys had filed "false statements and motions . . . since May 2013;" that the issues in the estate case had not been addressed by Chancellor Lundy in the partition case; and that Chancellor Lundy was not aware of the estate case.

¶30. The Carneys moved to strike Sandra's response, alleging that it contained "false, scandalous, and libelous allegations," and seeking sanctions against Sandra under Rule 11.

---

*Thornton*, No. 2016-CA-01773-COA, 2018 WL 3853479, at *4 (Miss. Ct. App. Aug. 14, 2018) (emphasis added). That is not the case here.

14

In support of their motion and request for sanctions, and to show that Chancellor Lundy was, in fact, aware of the estate case and the issues raised in that case, the Carneys attached the July 2013 motion to stay the partition action (then pending before Chancellor Lundy), which had the petition filed in the estate case attached as exhibit "A". Also attached to the Carneys' motion to strike was the transcript from the October 22, 2013 hearing on the motion to stay before Chancellor Lundy in the partition action. Sandra testified at that hearing.

¶31. Sandra responded that she was not aware of the motion to stay in the partition action having been filed in July 2013 because she had not located it in the court file in her searches in the past three years. According to Sandra, the motion to stay "myster[iously]" appeared when she called the Montgomery county chancery clerk on November 8, 2016.

¶32. After conducting a hearing held on November 14, 2016, Chancellor Daniels explained to Sandra that she was going to grant the Carneys' motion to dismiss because the issues Sandra raised in the estate case had been litigated and addressed in J.C.'s bankruptcy proceeding and in the partition proceeding. Chancellor Daniels also heard argument from both parties regarding the Carneys' motion to strike and request for sanctions against Sandra. The chancellor observed that there had been a hearing before Chancellor Lundy on the motion to stay the partition action pending resolution of the issues raised in the estate action and that the transcript from that hearing showed that Sandra testified at that hearing. The chancellor cautioned Sandra to be "careful about making scandalous, libelous statements about people," and that she "was not going to allow it here without sanctioning [her]." The chancellor further explained to Sandra that she is "responsible for what she put in [her

15

filings]." A judgment of dismissal was entered on November 14, 2016, and an order granting the Carneys' motion to strike, and imposing a $1,650 monetary sanction against Sandra, was entered that same day. Sandra filed her notice of appeal in the estate action on December 13, 2016, appealing both of these orders.[11]

## VI. Proceedings in the Mississippi Supreme Court and Court of Appeals

¶33. Sandra's notices of appeal filed in the consolidated fraud and partition actions were docketed in the Supreme Court as Case No. 2016-1759. Her notice of appeal in the estate action was docketed as Case No. 2016-1757. The Mississippi Supreme Court granted Sandra's motion to consolidate these appeals,[12] and also entered an order denying Sandra's Motion to Stay Final Judgment and Execution of any Actions in Partitioning Property Pending Outcome of Appeals Without Obligation of Posting Additional Supersedeas Bond

---

[11] Prior to filing her notice of appeal, Sandra filed a pro se Rule 60(b) motion to set aside the judgment for dismissal and order granting the Carneys' motion to strike and imposing sanctions against her on November 22, 2016. After Sandra filed her notice of appeal, the chancery court denied Sandra's Rule 60(b) motion on December 28, 2016. This occurred after the time for appealing the November 14, 2016 orders had elapsed. Sandra does not raise any issues relating to her Rule 60(b) motion in this appeal, nor could she do so. Although the chancery court retained jurisdiction to rule on Sandra's Rule 60(b) motion even after she filed her notice of appeal on the underlying orders, the motion was not "disposed of within the time allowed for appeal from the underlying judgment[s]," and thus a separate notice of appeal is required. *Thornton*, No. 2016-CA-01773-COA, 2018 WL 3853479, at *4 (¶21).

[12] The appellants in the consolidated appeals are Sandra and Howard. For ease of reference, we collectively refer to the appellants as Sandra. We observe that although Sandra attempted to join the Estate of Zona Mae Oliver as an appellant by adding it as a plaintiff in the notice of appeal filed in the fraud action, there is no such entity—Sandra's petition to open the Estate of Zona Mae Oliver was dismissed. Further, there is no order from the chancery court, or either appellate court, allowing addition of the Estate, even if it existed.

and/or in Alternative, Order an Injunction Pending Outcome of Appeals Without Posting

Additional Supersedeas Bond. The consolidated appeals were subsequently assigned to the

Court of Appeals.

## DISCUSSION

### I.      The Partition Action

¶34.    As detailed above, Chancellor Daniels entered a final judgment of partition in the

partition action on September 30, 2016, followed by an order denying Sandra's motion for

a new trial or to alter or amend the final judgment, entered on November 14, 2016. We find

that the final judgment of partition constitutes a "final, appealable judgment" with respect

to the partition action, despite the subsequent consolidation of the partition and fraud actions

pursuant to the agreed order entered on November 23, 2016. As the Mississippi Supreme

Court held in *United States Fidelity and Guaranty Company v. Estate of Francis ex rel.*

*Francis*, 825 So. 2d 38 (Miss. 2002), "[c]onsolidation in no way dispenses with the need for

separate pleadings *or, most importantly, separate final judgments*." *Id.* at 46 (¶22) (emphasis

added) (quoting *Smith v. H.C. Bailey Cos.*, 477 So. 2d 224, 231 (Miss. 1985)).

¶35.    Sandra seeks reversal of the final judgment of partition on various procedural, legal,

and evidentiary grounds that we have combined and reorganized for discussion purposes

below. For the reasons discussed below, we affirm the chancery court's final judgment of

partition.

### A.      Exclusion of Evidence Relating to J.C.'s Alleged Misappropriations

#### 1.      Waiver

17

¶36. Sandra asserts that the chancery court erred in granting the Carneys' motion in limine seeking to prevent her from offering testimony or evidence at the partition hearings relating to any claim that she may have due to J.C.'s actions. "We will not reverse a court's grant of a motion in limine unless we find the court abused its discretion." *Harris v. Michael*, 211 So. 3d 732, 735 (¶11) (Miss. Ct. App. 2016). We find no abuse of discretion in the chancery court excluding this evidence for the reasons explained below.

¶37. To briefly review the procedural proceedings relevant to Sandra's assertion, on July 25, 2014, Sandra's counsel filed a motion to controvert the partition action, seeking an apportionment relating to prior encumbrances and seeking an adjustment of the equities between the parties. This motion detailed Sandra's allegations of J.C.'s alleged wrongful sale of timber, cattle, and other personal property belonging to the Zona Mae Oliver estate and J.C.'s alleged wrongful pledging of 120 acres of real property belonging to Zona Mae to secure loans. For ease of reference, we will refer to these assertions as the J.C. misappropriation claims.

¶38. In September 2014, the Carneys moved, in limine, for an order preventing Sandra from offering any testimony or evidence relating to any claim that she may have due to the actions of James C. Oliver, Jr., as set forth in her motion to controvert. The chancery court addressed these motions, and, in relevant part, Sandra's May 21, 2014 pro se motion to correct facts and for equitable partition,[13] at a hearing held on February 2, 2015. The

---

[13] Much like her motion to controvert, in her pro se motion to correct facts and for equitable partition, Sandra requested the court to allow evidence relating to J.C.'s alleged fraudulent acts, and to disallow any partition of the property at issue due to those acts. Relevant to the same issues raised in her motion to controvert, Sandra, in her motion to

chancery court granted the Carneys' motion in limine, finding that any claims Sandra's father, Howard (Sandra's predecessor-in-title), may have had against J.C. (the Carneys' predecessor-in-title), were barred by J.C.'s 2012 discharge in bankruptcy. The chancellor further found that any claim Sandra derives through Howard was also barred.[14]

¶39. On March 26, 2015, Sandra filed a motion to reconsider the court's order on the Carneys' motion in limine. At the February 1, 2016 first partition hearing, however, Sandra's counsel informed the chancery court that Sandra would no longer be pursuing any objections to the chancery court's order excluding evidence and testimony on the J.C. misappropriation issues. He explained that after "doing further research in the bankruptcy code," he advised Sandra that only the bankruptcy court could address these issues and that she needed to "start back in bankruptcy court" to seek resolution. He concluded by explaining that they did not pursue a motion to reconsider the chancery court's decision granting the Carneys' motion in

---

correct facts, again set forth her allegations about J.C.'s alleged fraudulent conveyance of 120 acres of the property sought to be partitioned, and J.C.'s alleged wrongful appropriation of money received for the sale of cattle, cypress lumber, and other personal property from the Zona Mae Oliver estate.

[14] As noted above, on December 12, 2014, the Carneys filed an affidavit of Tarik O. Johnson, a bankruptcy attorney who opined that Sandra's claims against J.C. and his successors-in-title were barred by J.C.'s discharge in bankruptcy. On appeal, Sandra asserts that the chancery court impermissibly relied on this affidavit because it was not filed sixty days before the February 2, 2015 hearing. Sandra relies upon Rule 1.10(A) of the Uniform Chancery Court Rules for this proposition, which provides that "[a]bsent special circumstances the court will not allow testimony at trial of an expert witness who was not designated as an expert witness to all attorneys of record at least sixty days before trial." Even assuming Rule 1.10(A) would apply in this situation, the hearing transcript indicates that no objection was made to the Johnson affidavit, thus this issue was not preserved for appeal. In any event, we find no merit in this assertion because the transcript indicates that the court relied upon its own legal analysis in making its determination.

limine because, "quite honestly, . . . we came to the conclusion there wasn't any basis for it."

¶40.   In short, Sandra's counsel informed the chancery court that Sandra would not pursue any objections, as there was no basis to them, and these issues were to be resolved by the bankruptcy court.   Accordingly, Sandra cannot secure appellate reversal based upon objections that she effectively withdrew prior to the partition hearing. *See Coleman v. Ford Motor Co.*, 70 So. 3d 223, 235 (¶42) (Miss. Ct. App. 2011) (withdrawal of objection to jury instruction after modification failed to preserve objection for appeal).

### 2.      J.C.'s 2012 Discharge in Bankruptcy and Res Judicata

¶41.   Even if Sandra had preserved this issue, we find no error in the chancery court's ruling excluding evidence or testimony on the J.C. misappropriation issues at the partition trial. We find that these issues were barred by J.C.'s 2012 discharge in bankruptcy and under the doctrine of res judicata, as we address below.

### a.      Overview of Relevant Facts Regarding J.C.'s 2012 Discharge in Bankruptcy and its Effect

¶42.   The record reflects that J.C. filed for Chapter 13 bankruptcy in June 2007, received a discharge in bankruptcy in June 2012, and the case was closed in December 2012.  In her motion to correct facts filed in the chancery court, Sandra admitted that both she and her father and predecessor-in-interest, Howard, knew about J.C.'s bankruptcy proceeding and were aware of many of his alleged misappropriations.  In particular, the motion to correct facts provided that:

> Howard received "papers" in June 2007 informing him that he was listed as a creditor in J.C.'s bankruptcy proceeding;

20

Howard knew about the loan on the 120-acre piece of property since February 2007;

Howard visited the Zona Mae Oliver home and property in 2007 and "found out J.C. had sold all of the cows and some cypress timber out of the barn and he was not sure of what else he may have gotten out of the house and sold;"

Howard was represented by counsel in connection with J.C.'s bankruptcy, and that Howard "did, in fact, have a claim filed in the Bankruptcy Case #07-50836 for James Calvin Oliver, Jr." for $26,000 relating to the sale of cattle; and

As of 2007, Sandra had access to eighty pages of Zona Mae's checking account records.

¶43. On January 29, 2016 Sandra filed a motion to reopen the J.C. bankruptcy estate, reiterating the same claims she attempted to assert in the partition action, i.e, the J.C. misappropriation claims.[15] The chancery court's ruling is supported by the bankruptcy court's September 28, 2016 decision denying Sandra's motion to reopen J.C.'s Chapter 13 bankruptcy proceeding to assert her claims regarding J.C.'s use of the 120-acre parcel as collateral on a mortgage, and his alleged wrongful conversion of cattle, funds, timber and various pieces of Zona Mae Oliver's personal property. *In re Oliver*, Case No. 07-50836, at 9-11 (S.D. Miss. September 28, 2016). In that decision, the bankruptcy court found that "Howard (Sandra's predecessor-in-interest) had adequate notice of J.C.'s bankruptcy to file a nondischargeability action, and failed to do so or to request an extension of the deadline. Therefore, Sandra, on behalf of Howard, is now time-barred from filing a

---

[15] There had been an agreed ninety-day stay entered in the partition case on July 2, 2015 within which Sandra was to seek to reopen the J.C. bankruptcy proceedings to assert the J.C. misappropriation claims described above. The chancery court found that Sandra took no action during this ninety-day time period and denied her request to continue that stay once the 90 days had run.

21

nondischargeability action." *Id.* at 9; *see id.* at 11 ("The Court . . . finds that Howard's actual notice of [J.C.'s bankruptcy] approximately seventeen days, at the latest, before the bar date was sufficient notice to permit Howard to take steps to protect his rights. Sandra, on behalf of Howard, is now barred from bringing any nondischargeability claims."). *See also In re Oliver*, No. 07-50836, 2017 WL 1323467, at *5-6 (S.D. Miss. Apr. 10, 2017). The doctrine of res judicata likewise supports the chancery court's decision, as addressed below.

> **b. Standard of Review for Res Judicata and the Applicable Law**

¶44. Whether res judicata applies "is a question of law and will therefore be reviewed de novo." *Griffin v. ABN AMRO Mortg. Grp. Inc.*, 232 So. 3d 189, 191 (¶7) (Miss. Ct. App. 2017). "The doctrine of res judicata bars parties from litigating claims 'within the scope of the judgment' in a prior action." *Hill v. Carroll Cty.*, 17 So. 3d 1081, 1084 (¶8) (Miss. 2009) (quoting *Anderson v. LaVere*, 895 So. 2d 828, 832 (Miss. 2004)). "This includes claims that were made or should have been made in the prior suit." *Id.; see Fason v. Trussell Enters. Inc.*, 120 So. 3d 454, 459-61 (¶¶14-22) (Miss. Ct. App. 2013) (judgment debtor's claims against judgment creditor for malicious prosecution, false imprisonment, and abuse of process for filing a criminal action to collect a civil debt were barred by prior judgment creditor's collection suit under doctrine of res judicata). The doctrine is one "of public policy designed to avoid the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Id.*

¶45. "In applying the doctrine of res judicata, there are four identities which must be

22

present: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made." *EMC Mortg. Corp. v. Carmichael*, 17 So. 3d 1087, 1090 (¶10) (Miss. 2009) (internal quotation mark omitted). "In addition to the four identities, a fifth requirement is that the prior judgment must be a final judgment that was adjudicated on the merits." *Id.* We find that these factors are met in this case.

### i. Identity of the Subject Matter of the Action

¶46. The supreme court has described subject matter identity "as identity in the thing sued for," *Hill*, 17 So. 3d at 1085 (¶12), or "the 'substance' of the lawsuit." *Id.* (quoting *Harrison v. Chandler-Sampson Ins. Inc.*, 891 So. 2d 224, 233 (¶26) (Miss. 2005)). J.C.'s bankruptcy action concerned any claims that Howard may have had against J.C., including those with respect to the property that is the subject of the partition action. Any interest Sandra has in this property was derived through the May 11, 2009 quitclaim deed from Howard which transferred whatever interest he had in the property to her. Likewise, the only interest the Carneys have in the subject property was derived through the October 11, 2012 warranty deed from J.C. to them. This identity element is therefore met because the relevant subject matter at issue in both actions is J.C.'s alleged misappropriations that were claims Howard had against J.C.—claims that might have affected Howard and Sandra's alleged entitlement to credit by an adjustment to their ownership in the property.

### ii. Identity of the Cause of Action

¶47. "Under this factor, the cause of action in each suit must be the same." *Fason v.*

23

*Trussell Enterprises Inc.*, 120 So. 3d 454, 459 (¶16) (Miss. Ct. App. 2013). "Cause of action" has been defined by the supreme court "as the underlying facts and circumstances upon which a claim has been brought." *Hill*, 17 So. 3d at 1085 (¶13). We find that this element is met. The facts and circumstances surrounding both J.C.'s bankruptcy and Howard's potential claims and the issues the Carneys sought to exclude in the partition action are the same—J.C.'s alleged misappropriations for which Howard would have a claim in bankruptcy.

### iii.    Identity of the Parties to the Cause of Action

¶48.    The "identity of parties" element is met where both actions "involve[] the same parties or persons standing in privity to the parties." *Johnson v. Howell*, 592 So. 2d 998, 1002 (Miss. 1991); *see also Fason*, 120 So. 3d at 460 (¶18) ("'Privity' is a broad concept that requires us to look at the surrounding circumstances in order to determine whether a claim preclusion is justified."). As noted above, J.C.'s bankruptcy action concerned any claims that Howard may have had against J.C., including those with respect to the subject property. As the bankrupt, J.C. was a party to the bankruptcy action. As someone who possessed a claim against J.C., Howard was also a party to the bankruptcy action. The parties to the partition action are Sandra and the Carneys. As Howard's successor-in-interest, the only interest Sandra has in the subject property was derived through the May 2009 quitclaim deed from Howard to her. Likewise, as J.C.'s successors-in-interest, the only interest the Carneys have in the subject property was derived through the October 11, 2012 warranty deed from J.C. to them. Both actions, therefore, involve the same parties or their privies. This element is

24

met.

### iv. Identity of the Quality or Character of a Person Against Whom the Claim is Made

¶49. The supreme court has acknowledged that it "has not explicitly defined the identity of the quality or character of a person against whom the claim is made" element of res judicata. *Hill*, 17 So. 3d at 1086 (¶18). As explained in one respected Mississippi treatise:

> [A]ctual decisions demonstrate that two of the required identities, identity of the subject matter and identity of the quality or character of the person against whom the claim is brought, are redundant with the other two criteria . . . . [A]ny case that satisfies the same party requirement will inevitably meet the requirement of the identity of the quality and character of the person against whom a claim is brought.

2 Donald Campbell & Justin Matheny, MISSISSIPPI CIVIL PROCEDURE—MISSISSIPPI PRACTICE SERIES, § 24:2 at 153 (2018 ed.). Because the "same party" element is met, we find that this "character" identity element is likewise met.

### v. The Final Judgment Requirement

¶50. The fifth requirement for res judicata to apply is that "the prior judgment must be a final judgment that was adjudicated on the merits." *EMC Mortg. Corp.*, 17 So. 3d at 1090 (¶10). J.C.'s discharge in bankruptcy meets the "final judgment" requirement. Howard and Sandra had notice of J.C.'s bankruptcy proceeding and knew about numerous circumstances relating to Howard's alleged misappropriations. They plainly had ample notice so as to allow Howard to take steps to protect his rights in that proceeding, but he did not do so.

¶51. The doctrine of res judicata bars Howard and Sandra, his successor-in-interest, from raising these same claims in the chancery court. *See Price v. Pereira*, 172 So. 3d 1168, 1173-

74 (¶¶23-24) (Miss. Ct. App. 2014) (bankruptcy court's judgment operates as res judicata on all issues, claims, and defenses that could have been brought in that proceeding, and thus res judicata bars defendant's attempt to relitigate these issues in the state court proceeding.); *see also Phillips v. Kelley*, 72 So. 3d 1079, 1083 (¶16) (Miss. 2011) ("As [the plaintiffs] failed to avail themselves of procedures available in and through bankruptcy court, this Court is barred by the doctrine of res judicata from entertaining a collateral attack on the bankruptcy court's order or its jurisdiction."). Accordingly, we find this assignment of error without merit.

### B. The February 1, 2016 and September 27, 2016 Partition Hearings and Entry of the Final Judgment of Partition

¶52. Sandra asserts a number of assignments of error relating to how the chancery court conducted the partition proceedings, which we have combined to facilitate discussion. Sandra contends that the chancery court erred by (1) entering the final judgment in the partition action when the estate and fraud actions were still "open and active;" (2) not allowing Sandra to be heard on her objections to the commissions' report prepared for the final partition hearing; (3) allowing the Carneys' credit for back ad valorem taxes paid for 2009-2012, but not allowing Sandra credit for ad valorem taxes she paid in 2007 and 2008 and one-half equity credit in the 120 acres of "lost" estate property.

¶53. "For property-partition cases, the standard of review is whether the appellate court finds manifest error in the chancellor's decision. If so, the court will reverse the chancellor's findings." *Sims v. Mathis*, 192 So. 3d 1109, 1111 (¶7) (Miss. Ct. App. 2016). "Questions of law are reviewed de novo." *Id.* We find no merit in these assignments of error for the

26

reasons addressed below.

### 1. Entry of the Final Judgment of Partition When the Estate and Fraud Actions Were Pending

¶54. Regarding Sandra's first assignment of error, our review of the record reveals no error in the chancery court entering the final judgment of partition while the estate and fraud actions were pending, and we certainly do not find the "manifest error" that is necessary to warrant reversal. The partition and fraud actions were not consolidated when the final judgment of partition was entered on September 30, 2016, so there was no reason for Chancellor Daniels to delay entry of the final judgment of partition. The order transferring the fraud case to Chancellor Daniels and consolidating the partition and fraud cases was not approved by Chancellor Lynchard and entered until November 23, 2016, nearly a month after Chancellor Daniels entered the final judgment of partition.

¶55. As to the estate action, the partition action had already been pending for two months before the estate action was filed. There was no legal or practical reason for the chancellor to delay resolution of the partition action because the estate action was pending. On the contrary, the court in which the second parallel action was filed (i.e., the estate action) "ordinarily should hold it in abeyance pending the first action . . . [as] [f]inal judgment in the first certainly precludes further prosecution of the second." *DeFoe v. Great S. Nat. Bank N.A.*, 547 So. 2d 786, 788 (Miss. 1989).

### 2. Objections to the Commissioners' Valuation and Partition Report

¶56. Sandra's second assertion, that the chancery court erred when it would not hear her

27

objections to the commissioners' valuation and partition report, is without merit because she never served written objections to the report within ten days of it having been filed on May 16, 2016, or at any time before the September 27, 2016 final partition hearing. Mississippi Rule of Civil Procedure 53(g)(2) governs how Sandra was required to object to the commissioners' report. It provides:

> The court shall accept the master's[16] findings of fact unless manifestly wrong. *Within ten days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as provided by Rule 6(d).* The court after hearing may adopt the report or modify it or may reject it in whole or in any part or may receive further evidence or may recommit it with instructions.

M.R.C.P. 53(g)(2) (emphasis added).

¶57. In *Sims*, 192 So. 3d at 1111 (¶8), this Court rejected the same argument Sandra makes in this case. In that property-partition action, the Mosses claimed that they had objections to the special master's reports dividing the property at issue, and that the chancery court violated their due process rights by accepting the report without hearing their objections. Among other reasons, we found this argument without merit because "[t]he Mosses never filed an objection to either of the special master's reports; therefore, they were not entitled to [be heard on their objections]." *Id.* For the same reason, we reject Sandra's assignment of error on this point.

### 3. Credits Relating to Ad Valorem Taxes and the "Lost" 120 Acres

---

[16] The term "master" includes "a referee, an auditor, an examiner, *a commissioner*, and a special commissioner." M.R.C.P. 53(a) (emphasis added).

¶58. Sandra asserts that the chancery court erred when it gave the Carneys $5,350.15 credit for back ad valorem taxes paid on the property in 2009-2012 when they did not own the property, but did not allow Sandra credit for the 2007-08 ad valorem taxes that she paid when she and Howard were owners when the taxes were paid in 2009 and 2010. Sandra further asserts that the chancery court erred when it did not give her one-half equity credit in the 120 acres of "lost" estate property. We find no error in the chancery court's determinations on these issues.

¶59. A brief overview of the February 1 and September 27, 2016 partition hearings is necessary to address these issues. At the February 1 partition hearing, counsel for the parties presented five agreed-to exhibits to the chancellor, including a summary of the $10,700.31 in tax payments that the Carneys had made from 2009 through 2015. Sandra's counsel and the Carneys' counsel then presented the chancellor with an agreed order as to certain stipulated facts and delineating how the partition would be conducted (the First Judgment of Partition).

¶60. The chancellor signed the agreed-to First Judgment for Partition. That order appointed two commissioners to prepare a valuation and partition report, and specified that the plaintiffs (the Carneys) "have presented evidence that they have paid the ad valorem taxes for the years of 2009 through 2015 in an aggregate sum of $10,700.31 and they are entitled to a credit against the value due to the defendant, Sandra Jean Oliver, for one-half that sum, that is, $5,350.15." The order further provided that a final hearing would be held confirming the commissioners' report and addressing all other issues raised by the pleadings, including

29

any taxes paid by Sandra.

¶61. The commissioners' report was filed on May 16, 2016, and on September 27, 2016, a hearing was held in which the chancery court approved the commissioners' report and heard testimony regarding Sandra's payment of taxes on the property. The final judgment of partition was entered on September 30, 2016, which, in relevant part, reiterated the stipulated provision from the first partition order regarding the ad valorem taxes paid by the Carneys and the $5,350.15 credit; and denied Sandra's request for reimbursement for certain property taxes she paid in 2006-08.

¶62. Based on these facts, there is no merit in Sandra's assertion that the chancery court erred when it allowed the Carneys the $5,350.15 credit for back ad valorem taxes paid in 2009-2012. The record reflects that the parties stipulated to the $5,350.15 credit in the agreed-to first judgment of partition and, accordingly, Sandra's counsel did not object to the summary of the tax payments made by the Carneys for that time period entered as an exhibit at the first partition hearing. Sandra is bound by that stipulation and any purported error in the chancery court's finding on this issue has been waived. *See Wilbourn v. Hobson*, 608 So. 2d 1187, 1189 (Miss. 1992) ("A stipulated fact is one which both parties agree is true. . . . [T]he factual issues addressed in the [stipulation] are forever settled and excluded from controversy. Neither party can later change positions.").

¶63. We also find no merit in Sandra's assertion that the chancery court erred because it did not allow her credit for ad valorem taxes she paid in 2007 and 2008 or one-half equity credit in the 120 acres of "lost" estate property. The chancery court found that these claims

30

should have been raised and litigated in J.C.'s bankruptcy proceeding, and because they were not, they are barred. We agree with the chancery court's determination. As addressed in detail above, any such claims relate to J.C.'s alleged misappropriations and are barred by J.C.'s discharge in bankruptcy and under the doctrine of res judicata. *Price*, 172 So. 3d at 1173-74 (¶¶23-24); *Phillips*, 72 So. 3d at 1083 (¶16).

### C. The Rule 59 Motion for a New Trial or to Alter or Amend the Final Judgment of Partition

¶64. Sandra asserts that the chancery court erred in denying her motion for a new trial or to alter or amend the final judgment of partition, brought pursuant to Mississippi Rule of Civil Procedure 59. Sandra also asserts that the chancery court erred by striking the memorandum of law that Sandra filed in support of her Rule 59 motion. We find no merit in either assertion.

¶65. "Under Rule 59, the trial judge has discretion to grant a new trial or to amend the judgment if convinced that a mistake of law or fact has been made, or that injustice would attend allowing the judgment to stand." *McNeese v. McNeese*, 119 So. 3d 264, 272 (¶20) (Miss. 2013) (internal quotation mark omitted). "Review of a trial judge's denial of a . . . Rule 59 motion for a new trial is limited to abuse of discretion." *Id.* Our review of Sandra's "1st Amended" Rule 59 motion, her supporting brief, the exhibits to that brief totaling 117 pages, and the transcript of the hearing on that motion, reveals that the chancery court did not abuse its discretion in denying Sandra's motion.

¶66. As stated in Sandra's brief, her "primary issue" on appeal with respect to this assignment of error is that a new trial was warranted based upon the chancery court's ruling

31

excluding testimony or evidence of J.C.'s alleged misappropriations, and the court's failure to allow Sandra credit in the partition lawsuit with respect to these acts. Indeed, at the hearing on her motion, Sandra acknowledged that the voluminous exhibits attached to the brief supporting her motion constituted "[t]he proof of all the evidence that was never allowed to be presented." As we held above, we find no error in the chancery court's rulings excluding evidence or testimony on these issues, and we find no abuse of discretion in the chancery court denying Sandra's Rule 59 motion in which she largely attempts to relitigate these issues. *See McNeese*, 119 So. 3d at 273 (¶23) (finding no abuse of discretion in the chancellor's denial of the appellant's motion for a new trial or to alter or amend the judgment, as it was "merely an attempt to relitigate the case"); *see also Ford v. Mississippi Dep't of Human Servs.*, 158 So. 3d 1241, 1246 (¶17) (Miss. Ct. App. 2015).

¶67. In her Rule 59 motion and supporting brief, Sandra also asserted that the chancery court erred in "allowing . . . [pleadings] to be purposefully filed within the wrong cause;" and "in not acknowledging ineffective assistance of counsel . . . [that] forever prejudiced the outcome of [her] case." The first point is simply not grounds for a new trial on its face. It is not the chancellor's responsibility to monitor filings with the chancery clerk.

¶68. As to the second point, "there is no right to counsel [at all] in a civil proceeding." *Chasez v. Chasez*, 957 So. 2d 1031, 1038 (¶21) (Miss. Ct. App. 2007). Sandra, however, appears to argue that she is entitled to a new trial based upon the purported ineffectiveness of her various lawyers throughout the litigation. Sandra cites no legal authority for this proposition in the civil context. On the contrary, "the constitutional right to effective

32

assistance of counsel does not apply to a civil proceeding." *DeMyers v. DeMyers*, 742 So. 2d 1157, 1162 (¶20) (Miss. 1999); *see also Chasez*, 957 So. 2d at 1038 (¶21). We therefore find that this second this point does not warrant reversal of the chancery court's denial of Sandra's Rule 59 motion.

¶69. Finally, Sandra asserts that the chancery court erred in striking the memorandum of law that she filed in support of her Rule 59 motion. We find it is unnecessary for us to decide this issue in light of our review of the record, including Sandra's brief and accompanying exhibits, in determining that there was not an abuse of discretion on the chancellor's part in denying Sandra's Rule 59 motion. As such, there is no need to consider whether the chancery court erred in striking Sandra's brief and accompanying exhibits. *See Leatherwood v. State*, 548 So. 2d 389, 399 (Miss. 1989) (finding it unnecessary to decide certain points on appeal in view of the conclusion reached by the court).

## II.    The Fraud Action

¶70. We find that Sandra's fraud action appeal is premature, and, therefore, we dismiss it without prejudice to Sandra's right to pursue further proceedings after entry of a final judgment in the fraud action. To elaborate, nearly a month after Chancellor Daniels entered the final judgment in the partition action, Chancellor Lynchard granted the Carneys' motion to enter an agreed order transferring the fraud action to Chancellor Daniels, and consolidating the partition and fraud cases for further proceedings before Chancellor Daniels. He entered his order to this effect on November 23, 2016. Sandra filed a notice of appeal in the fraud case, seeking only to appeal entry of this agreed order. "An appeal is not a matter of right

but is subject to the statutory provisions, and the basic requirement is that appeals are proper only if from a final judgment." *Wigington v. McCalop*, 191 So. 3d 124, 126 (¶3) (Miss. 2016); *see also* Miss. Code Ann. § 11-51-3 (Rev. 2014) ("An appeal may be taken to the Supreme Court from any *final judgment* of a circuit or chancery court." (Emphasis added)). In order "to be a final decree appealable under section 11-51-3, the decree must be final as to all parties and all issues," and this Court is without jurisdiction to consider a direct appeal of a non-final judgment. *Turner v. Everett*, 13 So. 3d 311, 313 (¶12) (Miss. Ct. App. 2008); *see also* M.R.C.P. 54(a) and 54(b); M.R.C.P. 58; M.R.A.P. 3; M.R.A.P. 4.

¶71.    The agreed order for transfer and consolidation is not a "final" judgment because it does not dispose of all the issues before the chancery court in the fraud case. On October 17, 2016, the Carneys moved to dismiss Sandra's fraud lawsuit and sought sanctions against Sandra for filing a frivolous complaint. No order or judgment has been entered on this motion. Additionally, Sandra filed a pro se motion in the fraud lawsuit seeking the appointment of a temporary administrator for Zona Mae Oliver's estate to the extent necessary to join the estate as a party in the fraud lawsuit. Sandra also requested an "injunction against the partition action" pending appeal of the final judgment of partition. This motion likewise remains outstanding.

¶72.    Accordingly, we dismiss Sandra's fraud action appeal due to the lack of a final, appealable judgment in that action without prejudice her right to pursue further proceedings after entry of a final judgment in that action. *See U.S. Fid. & Guar. Co.*, 825 So. 2d at 46 (¶22).

34

### III. The Estate Action

¶73. Sandra raises four assignments of error in her estate appeal. She asserts that (1) the chancery court abused its discretion and applied the wrong legal standard in dismissing the estate case; (2) the chancery court erred in striking her response to the Carneys' motion to dismiss; (3) the chancery court erred in imposing sanctions in the amount of $1,650.00 against her; and (4) she and her father were deprived of their due process rights when the chancellor did not recuse herself due to her alleged bias and hostility towards Sandra. This fourth assignment of error includes assertions regarding Chancellor Daniels's conduct in the partition and estate action. We address each of these assignments of error in turn.

#### A. Dismissal of Sandra's Estate Action Based Upon the Doctrine of Res Judicata[17]

¶74. The chancery court dismissed Sandra's estate petition based upon the res judicata effect of the final judgment of partition and the order entered by the bankruptcy court on September 28, 2016, denying Sandra's motion to reopen J.C.'s Chapter 13 bankruptcy proceedings. We affirm the chancery court's dismissal of Sandra estate action on res judicata grounds. Having addressed the standard of review and general res judicata principles above, we simply reiterate that "[t]he doctrine of res judicata bars parties from litigating claims

---

[17] We recognize that J.C. filed a petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Southern District of Mississippi, Case No. 07-50836, and that he received a discharge in bankruptcy after completion of his Chapter 13 plan on June 11, 2012. We base our decision on res judicata principles, however, because the chancery court's judgment of dismissal provides that Oliver's petition "is dismissed for the reasons set out in the [Carneys'] motion," which was based upon the res judicata effect of the final judgment of partition and the order entered by the bankruptcy court on September 28, 2016, denying Sandra's motion to reopen J.C.'s Chapter 13 bankruptcy proceedings. That same argument was addressed by the parties on appeal.

within the scope of the judgment in a prior action . . . includ[ing] claims that were made or should have been made in the prior suit." *Hill*, 17 So. 3d at 1084 (¶8) (internal quotation marks omitted).

¶75. The four identities that must be present in applying the doctrine of res judicata are the identity of "the subject matter of the action; . . . the cause of action; . . . the parties to the cause of action; . . . and the quality or character of a person against whom the claim is made." *EMC Mortg. Corp.*, 17 So. 3d at 1090 (¶10). Additionally, "the prior judgment must be a final judgment that was adjudicated on the merits." *Id.*

¶76. The first identity element is met in this case because the subject matter presented in both the partition and estate actions is the same—the allocation of the Zona Mae Oliver's estate. *See Hill*, 17 So. 3d at 1085 (¶12).

¶77. Under the second identity element, "cause of action" is defined "as the underlying facts and circumstances upon which a claim has been brought." *Id.* at 1085 (¶13). We find that this element is met. The facts and circumstances surrounding both the partition and the estate actions are the same—the parties' respective interests in the property in the Zona Mae Oliver estate. Indeed, in her motion to consolidate the partition, fraud, and estate appeals, Sandra acknowledges that all three cases "are intertwined and involve the same or similar set of facts and issues."

¶78. The third "identity of parties" element is met where both actions "involve[] the same parties or persons standing in privity to the parties." *Johnson*, 592 So. 2d at 1002. The Carneys filed the partition action against Sandra, who gained her interest in the subject

36

property through her father, Howard. Sandra and Howard initiated the estate action. The Carneys and J.C., the Carneys' predecessor-in-title, were named as additional "interested parties." The same parties, or those in privity, are involved in both actions. This element is met.

¶79. The fourth identity element, relating to the "identity of the quality or character of a person against whom the claim is made," has not been explicitly defined under Mississippi jurisprudence. *Hill*, 17 So. 3d at 1086 (¶18). However, as explained by one commentator, "any case that satisfies the same party requirement will inevitably meet the requirement of the identity of the quality and character of the person against whom a claim is brought." 2 Donald Campbell & Justin Matheny, MISSISSIPPI CIVIL PROCEDURE—MISSISSIPPI PRACTICE SERIES, § 24:2 at 153 (2018 ed.). In this case the ultimate goal of both the partition and the estate actions is to determine the proper division of the Zona Mae Oliver estate between the two current interestholders, the Carneys and Sandra. Because Sandra and the Carneys are parties to both actions, and their character and identity are the same in both actions (i.e., current interestholders), we find that this fourth identity factor is met.

¶80. Lastly, we find that the "final judgment" requirement is also met here. As detailed above, the claims Sandra makes in the estate petition regarding J.C.'s alleged misappropriations—that J.C. allegedly misappropriated certain real and personal property, including timber, cattle, and other personal property belonging to Zona Mae or her estate and 120 acres owned by Zona Mae—are the precise claims Sandra made at least three times in the partition action. They are also the same claims that she alleges entitle her to an equitable

offset in the partition action.[18] The chancery court addressed Sandra's claims for an equitable

offset based on these allegations in several hearings in the partition action, finally

culminating in the September 30, 2016 final judgment for partition.

¶81.   Further, Sandra moved to stay the partition action on February 1, 2016, pending

resolution of her pro se motion to reopen J.C.'s bankruptcy estate.  In that motion,[19] Sandra

reiterated the same claims regarding J.C.'s alleged wrongful conduct with respect to the real

and personal property in the Zona Mae Oliver estate.  On September 28, 2016, the court

denied Sandra's motion.  In denying Sandra's motion for a new trial or to alter or amend the

---

[18] For ease of reference, we briefly summarize Sandra's pleadings in the partition action.  First, on July 16, 2013, Sandra filed a motion to stay the partition action, in which she claimed she had a right to an equitable offset in the interest J.C. deeded the Carneys. Sandra testified at length regarding J.C.'s alleged depletion of the estate, including the 120 acres belonging to the estate that J.C. allegedly lost in foreclosure, and the money that J.C. allegedly misappropriated for the sale of timber, cattle, and other personal property belonging to the Zona Mae Oliver estate.  Second, on July 25, 2014, Sandra's counsel filed a motion to controvert the partition action, seeking an apportionment relating to prior encumbrances and for an adjustment of the equities between the parties.  This motion again detailed Sandra's allegations of J.C.'s alleged wrongful sale of timber, cattle, and other personal property belonging to the Zona Mae Oliver estate, and J.C.'s alleged wrongful pledging of 120 acres of real property belonging to Zona Mae to secure loans.  Third, Sandra filed a pro se motion to correct facts and for equitable partition that does not appear to have been filed until June 16, 2015.  In that motion, Sandra repeated her allegations relating to J.C.'s alleged fraudulent conveyance of 120 acres of the property sought to be partitioned, and repeated her allegations in more detail regarding, among other issues, J.C.'s alleged wrongful appropriation of money received for the sale of cattle, cypress lumber, and other personal property from the Zona Mae Oliver estate.  Sandra also set forth her legal arguments rebutting the Carneys' judicial estoppel defense, laches defense, and their "unclean hands" defense.  The chancery court considered, heard, and ruled upon, each of these motions.

[19] The motions filed by Sandra in the bankruptcy proceeding were made a part of the chancery court record in the partition action at the February 1, 2016 hearing on Sandra's motion to reinstate the stay.

final judgment for partition, the chancery court observed that the bankruptcy court's September 28, 2016 decision also barred Sandra's claims.

¶82. Sandra asserts that because she has appealed the final judgment for partition, it does not meet the "final" judgment requirement for res judicata to apply. This argument is incorrect. "[A] decision by a trial court, even if the subject of an ongoing appeal, is entitled to preclusive effect." 2 Donald Campbell & Justin Matheny, MISSISSIPPI CIVIL PROCEDURE—MISSISSIPPI PRACTICE SERIES, § 24:6 at 164 (2018 ed.), citing *Smith v. Malouf*, 597 So. 2d 1299, 1301-02 (Miss. 1992) (holding that "the appeal [of a trial court judgment] to the Supreme Court of Mississippi does not prevent it from being res adjudicata"). Because the final judgment for partition was a final judgment on the merits, and the four identities addressed above were met, the chancery court appropriately dismissed the estate action as barred by the doctrine of res judicata.

## B. Procedural Issues Relating to the Carneys' Motion to Dismiss

¶83. Sandra asserts that res judicata should not bar the estate action for a number of procedural reasons. We find no merit in her arguments as detailed below.

### 1. Informal Stay of the Estate Action

¶84. Sandra first contends that the chancery court "had no right to stay the [estate case]" and allow the partition action to proceed. We disagree and we reject this argument for the same reason we rejected Sandra's argument above that the chancery court erred in entering a final judgment in the partition action when the estate and fraud actions were pending. The partition action was pending when the estate case was filed two months later. Under similar

39

circumstances in which two parallel cases were filed, the Mississippi Supreme Court recognized that the court "before which the second action is filed . . . ordinarily should hold [that action] in abeyance pending the first action. [citations omitted]. Final judgment in the first certainly precludes further prosecution of the second." *DeFoe*, 547 So. 2d at 788. Just as the supreme court recommended in *DeFoe*, the estate action was informally stayed pending a final judgment in the partition action.

### 2. Judicial Notice

¶85. Sandra next asserts that the chancery court, in ruling that the estate action was barred by res judicata, was not authorized to take judicial notice of the partition and bankruptcy judgments and the pleadings or transcripts that were not made part of the estate proceeding.[20] We recognize that generally "a trial court is not authorized to take judicial notice of cases pending or previously disposed of in the same court but outside the record in the case before it." *Wholey v. Cal-Maine Foods Inc*., 530 So. 2d 136, 138 (Miss. 1988) (quoting *Glass v. Armstrong*, 330 So. 2d 57, 58 (Fla. Dist. Ct. App.1976)); *Viator v. Stone*, 201 Miss. 487, 496, 29 So. 2d 274, 276, *suggestion of error overruled*, 201 Miss. 487, 29 So. 2d 658 (1947).[21]

---

[20] The relevant bankruptcy pleadings were filed in the partition proceeding as exhibits in hearings on Sandra's various motions in that action. The Carneys identified, but did not attach, the final judgment of partition and the bankruptcy order. The estate action also does not contain the pleadings or hearing transcripts from the partition action, with the exception of the first motion to stay the partition action filed by Sandra's counsel, and the transcript of the hearing on that motion.

[21] In *Viator*, 201 Miss. at 496, 29 So. 2d at 276, the supreme court recognized that, "generally, an issue whether prior cases between parties involved [the] same issues as [the] present case should be determined on pleadings and proof, and [the trial] court could not have recourse to judicial notice in such situation."

¶86. The reason for this general rule, however, is that without having the pleadings from the other action in the record, the appellate court would not be able to review, de novo, whether the trial court appropriately applied the doctrine of res judicata. *See Viator*, 201 Miss. at 496, 29 So. 2d at 276; *see also Glass*, 330 So. 2d at 58. We find that an exception to the general rule exists here because we have before us a consolidated appeal containing the record from the partition, fraud, and estate actions. Indeed, in her motion to consolidate these appeals, Sandra acknowledged that all three cases "are intertwined and involve the same or similar set of facts and issues on appeal . . . [and] [t]hat the interests of justice, judicial economy, and convenience to the parties would be well-served consolidating these matters."

¶87. We find that under these circumstances, and in the interest of judicial economy, the chancery court appropriately took judicial notice of the partition and bankruptcy judgments and pleadings in the partition action in determining that the estate action was barred by res judicata. *See Griffin*, 232 So. 3d at 191 (¶¶5-10) (finding that the trial court appropriately granted defendants' motion to dismiss on res judicata grounds based upon pleadings and judgment of dismissal previously entered in federal court);[22] *see also Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (finding that a district court appropriately took judicial

---

[22] We recognize that in *Eubanks v. Wade*, 220 So. 3d 247, 251 (¶20) (Miss. Ct. App. 2017), this Court held that a "prior judgment that [the defendant] previously obtained against [the plaintiff] is a matter outside the complaint that should not be considered in a motion to dismiss." Although we recognized in *Eubanks* that the defendant had raised "an important and possibly valid affirmative [res judicata] defense," we remanded that case to the circuit court for further proceedings consistent with our opinion. *Id.* For the reasons identified above, *Eubanks* is distinguishable from the case now before us and is not binding precedent here.

notice of a consent judgment in a prior action in deciding a motion to dismiss based upon res judicata grounds); *Yan Won Liao v. Holder*, 691 F. Supp. 2d 344, 352 (E.D.N.Y. 2010) (a district court took judicial notice of proceedings in a related action in ruling on defendants' motion to dismiss based on the res judicata effect of the judgment in the related action).[23]

### 3. Conversion to Summary Judgment Motion

¶88.    Sandra also asserts that the chancery court converted the Carneys' motion to dismiss to a summary judgment motion by considering pleadings and proceedings from the partition action, which are outside the petition to open the estate.  Citing *Sullivan v. Tullos*, 19 So. 3d 1271, 1274-76 (¶¶14-19) (Miss. 2009), Sandra contends that by doing so, the chancery court erred because it did not provide the ten days' notice of conversion, as required by Rules 12(c) and 56(c) of the Mississippi Rules of Civil Procedure.[24]

¶89.    As we held above, the chancery court appropriately took judicial notice of the judgments and pleadings in the partition action, and thus technically the chancery court did not consider "extrinsic evidence" so as to convert the Carneys' motion to one for summary judgment.  But even if these materials could be considered "extrinsic evidence," we find that

---

[23] At the appellate level, both the Mississippi Supreme Court and this Court have recognized that it is appropriate to take judicial notice of their files.  *See In re Dunn*, 166 So. 3d 488, 492 n.6 (Miss. 2013) ("This Court takes judicial notice of its files."); *Bailey v. State*, No. 2017-CP-00757-COA, 2018 WL 3737930, at *1 n.1 (Miss. Ct. App. Aug. 7, 2018) ("We take judicial notice of our own docket.").

[24] Under Rule 12(c), "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Rule 56(c) provides that a summary judgment motion "shall be served at least ten days before the time fixed for the hearing."

the *Sullivan* case is distinguishable, and we find no error under the circumstances in this case.

¶90.    In *Sullivan,* 19 So. 3d at 1273 (¶5), the trial court converted a Rule 12(b)(6) motion to dismiss to a motion for summary judgment when evidence outside the pleadings was presented at the hearing on the motion. The supreme court held that the trial court erred when it converted the motion to one for summary judgment without ordering a continuance to allow the heirs in that case "a reasonable time to present evidence necessary for the proper adjudication of their claims." *Id.* at 1273, 1276 (¶¶5,19).

¶91.    In *Robison v. Enterprise Leasing Co.-South Central Inc.*, 57 So. 3d 1, 4 (¶10) (Miss. Ct. App. 2010), this Court distinguished *Sullivan* and held that if a party has notice that a motion to dismiss may be treated as a motion for summary judgment, and that party has an opportunity to respond, then the trial court does not err in failing to provide the formal ten-day notice of conversion. *Id.* ("[T]he heart of the ten-day notice [of conversion] requirement [is to provide] notice of the nature of the motion and an opportunity to respond."). In *Robison*, Enterprise's original motion contained exhibits outside the pleadings, thus the Robisons were on notice from the filing of the motion that these matters would be considered. *Id.* at 3-4 (¶¶8-9). The Robisons also had an opportunity to respond to these issues, as the hearing on the motion was held more than three months from the time the original motion was filed. *Id.* at 3 (¶8).

¶92.    Similarly, the Carneys' motion identified the partition and bankruptcy judgments and proceedings that they relied upon in arguing that Sandra's estate action was barred by res judicata. Thus, Sandra was on notice of their arguments from the time she received their

motion. Moreover, Sandra had an opportunity to respond to these arguments, as the hearing took place nearly a month after the Carneys filed their original motion. Indeed, in her response, Sandra explicitly set forth her arguments that these judgments did not bar her estate action based upon res judicata. These same arguments were addressed by the chancery court at the hearing—no new evidence or new arguments were presented. In short, just as this Court held in *Robison*, Sandra "had notice of the nature of the motion and an opportunity to respond. Rule 12(b)'s requirement of an opportunity to respond and Rule 56(c)'s requirement that a summary judgment motion be served ten days before the hearing have been more than satisfied in this case." *Robison*, 57 So. 3d at 4 (¶10).[25]

### C. The Motion to Strike Sandra's Response to the Carneys' Motion to Dismiss and the Request for Sanctions against Sandra

#### 1. Granting of the Motion to Strike

¶93. Sandra asserts that the chancery court erred in striking her response to the Carneys' motion to dismiss. We find that it is unnecessary to decide this issue in light of our conclusion that the chancery court appropriately applied the doctrine of res judicata in dismissing Sandra's estate action. In reaching this decision, we undertook a de novo review of the record, including Sandra's response to the Carneys' motion to dismiss. Accordingly,

---

[25] Sandra also contends on appeal that a res judicata contention cannot be brought in a motion to dismiss, and, instead, it must be pleaded as an affirmative defense. However, in her response filed in the chancery court, Sandra did not challenge the Carneys' motion on this basis. Her argument on that point is therefore waived on appeal. *Purvis v. Barnes*, 791 So. 2d 199, 202 (¶7) (Miss. 2001) ("The law is well settled in Mississippi that appellate courts will not put trial courts in error for issues not first presented to the trial court for resolution, and that issues not presented in the trial court cannot be first argued on appeal.").

there is no need to consider whether the chancery court erred in striking this pleading. *Leatherwood*, 548 So. 2d at 399; *Pollard v. State*, 205 So. 2d 286, 287 (Miss. 1967) ("Numerous assignments of error are urged, but the disposition of this case does not require our detailed consideration [of them].").

## 2.    Sanctions

¶94.    Sandra also asserts that the chancery court abused its discretion in imposing $1,650 in Rule 11 sanctions against her.  We disagree.  Rule 11 provides for sanctions where "scandalous or indecent matter is inserted in pleadings" and further provides:

> If any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order such a party. . . to pay to the opposing party . . . the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys' fees.

M.R.C.P. 11.  "'The decision to award monetary sanctions is left to the discretion of the trial court,' and is reviewed for abuse of discretion." *Boatwright v. Boatwright*, 184 So. 3d 952, 961 (¶22) (Miss. Ct. App. 2015) (quoting *Hampton v. Blackmon*, 145 So.3d 632, 634 (¶7) (Miss. 2014)).

¶95.    Sandra contends that she had no notice that the Carneys were seeking sanctions. Sandra, however, supports her "lack of notice" argument by citing to Federal Rule of Civil Procedure 11, which requires that sanctions be sought by a separate motion, and allows a party twenty-one days to withdraw a challenged pleading.  Sandra argues that this was not done in her case.  No such requirements, however, are found in Mississippi Rule of Civil Procedure 11, and the Carneys' motion gave Sandra sufficient notice that they were seeking

45

sanctions against her. In the opening paragraph of their motion to strike, the Carneys cited Rule 11(b) as authority for their request for sanctions, and they quoted from Rule 11(b) in the first numbered paragraph of their motion to strike. Then, in the final paragraph of their motion to strike, the Carneys explicitly requested Rule 11 sanctions due to the alleged "scandalous and untrue" statements in Sandra's response to their motion to dismiss. These statements provided ample notice that the Carneys were seeking sanctions against Sandra.

¶96. Sandra also asserts that the chancery court abused its discretion in imposing sanctions because it had no basis to do so. For the reasons addressed below, we find that based upon our review of the record, including Sandra's response to the motion to dismiss, the Carneys' motion to strike and for sanctions, Sandra's response to that motion, and the hearing transcript on the matter, the chancery court did not abuse its discretion in imposing Rule 11 sanctions against Sandra.

¶97. In addressing the imposition of Rule 11 sanctions against a pro se party, the supreme court has recognized that "[p]ro se parties should be held to the same rules of procedure and substantive law as represented parties." *Dethlefs v. Beau Maison Dev. Corp.*, 511 So. 2d 112, 118 (Miss. 1987). "A motion or pleading is filed for the purpose of harassment or delay when the party does not have a viable claim." *In re Estate of Necaise*, 126 So. 3d 49, 57 (¶27) (Miss. Ct. App. 2013). Sandra's response contains a number of accusations against opposing counsel and statements about the proceedings in the partition action that are simply not based in fact. For example, Sandra claimed that res judicata could not apply because Chancellor Lundy, who was originally assigned the partition action, was not aware of the

46

estate action, and that he "never addressed any of [the] issues contained in [the estate] claim."

¶98.   That argument was factually inaccurate.  In rebutting this accusation, counsel for the Carneys attached the motion for stay filed in the partition action on Sandra's behalf, which contained the same allegations that Sandra made in her estate petition regarding J.C.'s alleged waste and depletion of the estate, and in which she also claimed that she had a right to an equitable offset in the interest J.C. deeded to the Carneys.  The Carneys' counsel also attached the transcript from the October 2013 hearing before Chancellor Lundy on the motion for a stay of the partition action.  The transcript shows that Sandra testified at length at that hearing.

¶99.   Sandra claims that she was not aware of this motion because her attorney at that time did not keep her informed about the filings he made in the partition and estate proceedings.  We find no merit in this excuse.  Sandra was a witness at the October 2013 hearing on the motion for stay in the partition action, and she testified at length regarding J.C.'s alleged depletion of the Zona Mae Oliver estate.  Moreover, just a few months later, Sandra moved, pro se, in the partition action, seeking to correct facts stated at the October 2013 hearing.  In that motion she also asked the court to allow additional evidence relating to J.C.'s alleged fraudulent acts, and to disallow any partition of the property at issue due to J.C.'s alleged fraudulent acts (the motion to correct facts and for equitable partition).

¶100.  In her response to the Carneys' motion to dismiss, Sandra also asserted that "false statements and motions" filed by the Carneys' counsel "caused [the estate claim] to never [be] heard or litigated."  The record contains no factual basis for this accusation.  Further, a

47

stay of the estate action was legally justified. As we recognized above, where two parallel cases are filed the court "before which the second action is filed . . . ordinarily should hold [that action] in abeyance pending the first action." *DeFoe,* 547 So. 2d at 78.

¶101. As this Court has recognized, "[i]n the absence of a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors, the judgment of the court's imposition of sanctions will be affirmed." *Boatwright*, 184 So. 3d at 961 (¶22) (quotation mark omitted). We find no "clear error of judgment" on the chancery court's part in imposing sanctions against Sandra relating to her response to the Carneys' motion to dismiss.

¶102. Finally, Sandra asserts that the attorney-fee calculation submitted by the Carneys' counsel does not support the $1,650 sanction amount. There is no merit to this contention. The record contains a detailed attorney billing record supporting the time spent in addressing the assertions contained in Sandra's response to the Carneys' motion to dismiss. We find that this is sufficient support for the chancery court's imposition of "reasonable" attorney fees of $1,650 in this matter.

### D. The Chancellor's Alleged Bias

¶103. Sandra asserts that her and her father's due process rights were violated at hearings before Chancellor Daniels that took place in both the partition and estate matters due to the chancellor's alleged bias against her. We find Sandra's contentions without merit.

¶104. The supreme court has recognized that "[t]his Court *presumes* that a judge, sworn to administer impartial justice, is qualified and unbiased. For a party to overcome the

48

presumption, the party must produce evidence of a reasonable doubt about the validity of the presumption." *Kinney v. S. Miss. Planning & Dev. Dist. Inc.*, 202 So. 3d 187, 194 (¶20) (Miss. 2016) (internal quotation marks and citations omitted). Continuing, the supreme court explained that "[r]easonable doubt may be found when there is a question of whether a reasonable person, knowing all of the circumstances, would harbor doubts about the judge's impartiality. Said another way, the presumption is overcome only by showing beyond a reasonable doubt that the judge was biased or unqualified." *Id.*; *see Washington Mut. Fin. Grp. LLC v. Blackmon*, 925 So. 2d 780, 785 (¶12) (Miss. 2004) (recognizing the "heavy burden" a movant bears in proving that a judge's purported hostility requires recusal).

¶105. Sandra contends that the chancellor displayed "biased actions" in the partition action at the February 2, 2015 hearing on Sandra's motion to controvert, the Carneys' motion in limine to exclude testimony or evidence relating to any claim that Sandra may have due to the actions of J.C., and issues relevant to that motion raised in Sandra's pro se motion to correct facts. Sandra was represented by counsel at that hearing. In her brief, Sandra refers to this hearing as a "non-hearing," and contends that the chancellor showed bias because she did not allow presentation of evidence or testimony. We disagree.

¶106. At the beginning of the hearing, the chancellor observed that Sandra had "explain[ed] her whole case" in her pro se motion to correct facts. The chancellor then stated on the record that she had "read the entire [court] file and not just the motions that are noticed for hearing today . . . [and that she] under[stood] very thoroughly what the issues [were and] the issues that [Sandra tried] to raise . . . ." The chancellor then heard argument of counsel at

49

length, and discussed numerous points of law with counsel. In our review of the hearing transcript, we find no indication that the chancellor displayed bias in any way at the February 2, 2015 hearing.

¶107. Regarding subsequent hearings before Chancellor Daniels, Sandra states in her brief that after the February 2, 2015 "non-hearing," she "filed a formal complaint with the judicial committee against Judge Daniels based on all of the biased actions, reactions, denial of a hearing and presenting of any testimony as well as remarks made at the February 2nd, 2015 hearing." Sandra's judicial performance complaint against Chancellor Daniels was filed in June 2016, at least three months before the September 27, 2016 final partition hearing before Chancellor Daniels, and five months before the November 14, 2016 hearing in the estate action, also before Chancellor Daniels. On appeal, Sandra claims that her filing of the judicial performance complaint against Chancellor Daniels in June 2016 is a basis for requiring Chancellor Daniels's recusal at these subsequent hearings.

¶108. As to this argument, we observe that Sandra did not object or file a motion in either the partition or estate action asking Chancellor Daniels to recuse. Sandra's argument about Chancellor Daniels's alleged bias was not raised until her appeal, which procedurally bars her from arguing the issue in this case. *Tubwell v. Grant*, 760 So. 2d 687, 689 (¶8) (Miss. 2000). As the supreme court recognized in *Tubwell*:

> Over the years, this Court has been quick to point out that it will not allow a party to take his chances with a judge about whom he knows of [alleged] grounds for recusal and then, after he loses, file his motion. Where the party knew of the grounds for the motion or with the exercise of reasonable diligence may have discovered those grounds, and where that party does not move timely prior to trial, the point will be deemed waived.

50

*Id.* As a result of her untimely objection, Sandra has waived this issue. *See also Latham v. Latham*, 261 So. 3d 1110, 1113 (¶¶9-11) (Miss. 2019) (holding that appellant waived recusal argument on appeal where he knew the ground for asserting that recusal was warranted prior to his hearing before the chancery court, but did not object or seek recusal of the chancellor at the trial court level); *Adams v. Rice*, 249 So. 3d 463, 467-68 (¶¶15-21) (Miss. Ct. App. 2018) (holding that appellant was barred from raising a recusal argument on appeal where she did not file a motion for recusal in the chancery court based upon a pending bar complaint and federal action against the chancellor).

¶109. Nevertheless, Sandra asserts that the chancellor's alleged bias violated her and her father's due process rights, thus we address this issue on the merits. Because Sandra did not object or file a motion for recusal in the chancery court, however, she must rely on plain error to challenge the chancellor's failure to recuse herself on appeal. "The plain-error doctrine nearly always is applied in the criminal context, but there is no bar to applying it in a civil case." *Maness v. K & A Enters. Miss. LLC*, 250 So. 3d 402, 410 (¶21) (Miss. 2018). This doctrine "is implicated when an error occurs at trial which affects substantial rights and results in a manifest miscarriage of justice." *Beasley v. State*, 136 So. 3d 393, 399-400 (¶20) (Miss. 2014) (internal quotation mark omitted). We find that Sandra has failed to show that it was plain error for the chancellor to preside over the September 27, 2016 or November 14, 2016 hearings.

¶110. As noted, Sandra asserts that Chancellor Daniels should have recused herself from these hearing in the light of the judicial performance complaint Sandra filed against her in

June 2016. In *Adams*, 249 So. 3d at 467-68 (¶¶15-21), Elle Adams made the same argument, asserting that the chancellor in that case should have recused herself because Elle had filed a state bar complaint and federal action against the chancellor. We rejected Elle's argument, finding that the chancellor's awareness of the federal action against her, and the pending state bar complaint, did not require recusal where there was "no evidence that the chancellor's impartiality might be reasonably questioned." *Id.* at 468 (¶21). We find that the same analysis applies in this case.

¶111. Sandra quotes from the September 27, 2016 final partition hearing as an example of the chancellor's "grudge" against her. But in this excerpt the chancellor, at most, is expressing frustration with the parties' inability to reach an agreement on any detail, including what half of the property they wanted ("I was hoping y'all could at least agree on one thing, but obviously y'all cannot agree on whether the sun is shining outside or not."). Our review of the transcript from the September 27, 2016 hearing shows no bias warranting recusal.

¶112. Similarly, Sandra quotes snippets of exchanges from the November 14, 2016 hearing in the estate case that she claims demonstrates the chancellor's alleged animosity towards her. These include exchanges such as the chancellor telling Sandra that "[i]f you have a problem with my ruling, appeal it[;]" and the chancellor's admonishment to Sandra to "be careful[,]" stated in the context of Sandra representing herself. These statements, particularly when read in context, are nowhere near the "combative, antagonistic, discourteous, and adversarial" conduct that would lead a reasonable person to conclude that Sandra did not

receive a fair hearing. *Cf. Schmidt v. Bermudez*, 5 So. 3d 1064, 1074 (¶¶19-21) (Miss. 2009) (finding that a chancellor's "abusive and inappropriate conduct," including, but not limited to, repeatedly questioning a party's honesty, badgering that party during cross-examination regarding evidence to be presented in her own case, and accusing the party of "diarrhea of the mouth" violated party's substantive right to a fair trial). Sandra also quotes an exchange in which the chancellor refused to let Sandra testify about ad valorem tax issues—but, as the chancellor explained in the next line of the transcript (not included in Sandra's snippet), this was because Sandra was trying to raise issues already ruled upon at the final partition hearing. Nothing in that exchange suggests a lack of impartiality in any way.

¶113. In short, our review of the September 27, 2016 and November 14, 2016 hearing transcripts does not reveal any exchange between Sandra and the chancellor that suggests any hostility, lack of impartiality, or ill will on the chancellor's part so as to result in a "manifest miscarriage of justice" in this case. We reject this assignment of error.

¶114. Based upon the foregoing, we affirm the chancery court's final judgment of partition on res judicata grounds; we dismiss the fraud action appeal without prejudice to Sandra Oliver's right to pursue further proceedings after entry of a final judgment in that action; and we affirm the chancery court's dismissal of the estate action on res judicata grounds.

¶115. **APPEAL NO. 2016-CP-01757: AFFIRMED. APPEAL NO. 2016-CP-01759: AFFIRMED IN PART, AND DISMISSED IN PART.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**